# Shaw & Cox v. Lindsey.

*Bill in Equity by Purchaser at Execution Sale, to quiet Title, and enjoin Action at Law.*

1. *Filing demurrer after answer.*—When a demurrer is not incorporated in the answer, as authorized by the statute (Code of 1876, § 3783), it is irregular to file it afterwards without leave of the court, and, if so filed, it may be struck from the files on motion; but, under the liberal statute of amendments (§ 3790), the court would be bound, on application, to allow the demurrer to be incorporated in the answer at any time before final decree; and proceeding to a hearing on the demurrer, without objection, is a waiver of the irregularity.

2. *Levy and sale of equity of redemption under execution; foreclosure of mortgage by sale under power.*—By statute (Code of 1876, § 3209), an execution may be levied on an equity of redemption in mortgaged lands; but, if the mortgage is foreclosed by a sale under the power, after the levy, but before the sale under the execution, the equity of redemption is cut off, and the purchaser at the subsequent execution sale acquires nothing.

3. *Levy and sale of "perfect equity" under execution.*—The only "perfect equity" which, under the said statute, can be levied on and sold under execution, is that of a purchaser who has paid the entire purchase-money: the statute does not apply to the interest of a defendant in execution, whose lands are sold under a power in a mortgage while the execution is in the hands of the sheriff, and bought in for him by a third person, to whom he does not refund the money until after the subsequent sale under the execution.

4. *Sale of lands by assignee in bankruptcy.*—When the title to lands surren-

dered by a bankrupt is in litigation, and the assignee has not acquired posses-
sion, he can not sell them without an order of the court of bankruptcy, made
on his petition, after notice to the parties claiming adversely; and a sale by
him, without such an order, is a nullity.

5.   *When equity will not enjoin ejectment.*—A court of equity will not, in the
absence of some special equity, enjoin the prosecution of an action of ejectment;
nor will it interfere, where the title asserted by each party is of legal cogni-
zance; as where the plaintiff sues to recover land which he claims as his home-
stead, and the defendant insists that his right of homestead exemption has
been waived and forfeited.

APPEAL from the Chancery Court of Pickens.
Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 2d September, 1872,
by F. F. Lindsey, against B. F. Shaw, Elihu Cox, and others ;
and sought to quiet the complainant's title to a certain tract
of land, of which he was in possession under claim of title,
and to enjoin the prosecution of two actions at law, brought
by said Shaw and Cox respectively, each claiming a part of
the land.   The complainant asserted title to the land under
a purchase at sheriff's sale under execution against said Cox,
and a subsequent purchase at a sale made by John P. Lang,
as the assignee in bankruptcy of said Cox.   Cox claimed
eighty acres of the land as his homestead exemption, and
commenced his action at law to recover it on the 2d Septem-
ber, 1872.   Shaw claimed the residue of the tract under a
purchase at a sale made by H. S. Shelton, as trustee in a
deed of trust executed by said Cox, and commenced his ac-
tion to recover it on the 4th November, 1871.   The deed of
Cox to Shelton, as trustee, was dated the 23d August, 1866 ;
was given to secure the payment of several promissory notes,
all dated the 16th August, 1866, and falling due on the 1st
March, 1867, 1868, and 1869, respectively, amounting in all
to about $5,000; and authorized the trustee to sell, if default
should be made in the payment of any of the secured notes
at maturity.   It was executed by said Cox alone, and duly
acknowledged by him.   Default having been made in the
payment of the notes first falling due, the trustee advertised
and sold the lands, according to the provisions of the deed,
on the 24th August, 1867 ; and they were knocked down to
A. Latham as the purchaser, to whom they were conveyed
by the trustee, and by whom they were afterwards conveyed
to said B. F. Shaw, by quit-claim deed dated the 30th March,
1868.   The complainant recovered a judgment against said
Elihu Cox and others, on the 28th April, 1863; and the
records having been destroyed by fire, this judgment was
substituted, on motion, on the 29th April, 1867.   An execu-
tion on this judgment was issued, and went into the hands
of the sheriff, on the 25th May, 1867, and was by him levied
on said lands; and this execution was in his hands when the

lands were sold by Shelton under the deed of trust. The lands were sold by the sheriff, under this levy, on the 7th October, 1867, when the plaintiff in the execution became the purchaser, and received the sheriff's deed. On the 16th November, 1867, an *alias* execution was issued on said judgment, and was levied on three hundred and twenty acres of the land, which were not embraced in the former levy and sale; and at the sale under this levy, on the 6th January, 1868, the said plaintiff became the purchaser. On the 10th March, 1868, said Cox was duly declared a bankrupt; and at a sale by his assignee in bankruptcy, made on the 8th January, 1870, the complainant became the purchaser of his interest in the said lands, and received the assignee's deed.

The above are the material facts shown by the bill and its exhibits. The bill alleged that, though Latham was the ostensible purchaser at the sale by Shelton under the deed of trust, the purchase was really made for the benefit of said Cox, through the agency of said Shaw, who was his son-in-law, and the assistance of said Shelton, who was his attorney; and that, by agreement and arrangement between these parties, the transaction was thus consummated: Cox had a growing crop on the land, which was not subject to the levy of the execution, but neither he nor Shaw had any money; while Latham "was a prosperous farmer, ahead of the world, and occasionally had money to lend at a fructifying per cent., when well secured by lien-notes on growing crops;" and he was induced by them to attend the sale, and advance the money ($467.20) to buy the lands, receiving a conveyance from the trustee, and a written obligation from Cox, in the form of a promissory note for advances to make a crop, which was declared to be a lien on his crop then growing. This obligation, or note, a copy of which was made an exhibit to the bill, was dated the 10th August, 1867, and was recorded on the 8th October, 1867; but the bill alleged that it was in fact executed and delivered on the day of the trustee's sale, August 24, 1867, and was given pursuant to the arrangement above stated; and that Cox gathered, ginned, and packed his crop of cotton, with the permission of Latham, sold it, and sent the money to Latham by the hands of Shaw to pay the note, whereupon Latham executed his quit-claim deed to Shaw, as above stated. The complainant insisted, in his bill, that the execution on his judgment created in his favor a lien on all the lands, which continued up to the date of the sale by the trustee; that the purchase of Latham having been made for the benefit of Cox, as above stated, Latham was only a trustee of the legal title, while Cox had a perfect equity, which was subject to sale under the complainant's

execution, and which passed to him by his purchase at the execution sale; "and if complainant is mistaken as to his rights acquired under said sheriff's sales as aforesaid, then he avers that said Cox dragged after him, into said bankrupt court, all the equitable and legal title in and to said lands that was still vested in him," and that complainant acquired this interest by his purchase at the sale by the assignee in bankruptcy. The bill alleged, also, that Cox never claimed any exemption in the lands prior to the sheriff's sales; that he yielded the possession to the complainant on his purchase at the execution sale, only reserving the right to gather the growing crop; and that the complainant had continued in peaceable possession up to the filing of his bill. Latham, Shelton, and Lang, the assignee in bankruptcy, were joined as defendants to the bill, with Cox and Shaw. The prayer of the bill was for an injunction of the actions at law; that Shaw and Latham be declared trustees of the legal title for the benefit of the complainant, and be compelled to convey to him; and the general prayer was added, for other and further relief.

Separate answers were filed by Latham, Shelton, and Lang, and a joint answer by Shaw and Cox. Latham alleged that he became the nominal purchaser of the lands at the trustee's sale, at the instance and request of Shaw, to whom he had agreed to advance the money; that he took the sheriff's deed to himself for better security, and the lien-note on the growing crop as additional security; that Shaw afterwards repaid him the money so advanced, with interest, and he then conveyed the lands by quit-claim deed to said Shaw. Shaw and Cox, in their joint answer, alleged that the purchase was made by Shaw for his own benefit; that Cox gave the lien-note on the crop at the request of Shaw, and afterwards loaned the money to Shaw which the latter paid to Latham; and that Shaw, in these transactions, was acting in good faith, for his own benefit, and expected to get a good title to the lands by his purchase. They attacked the validity of the complainant's judgment, on grounds which it is not necessary to notice; denied that he acquired any title by his purchases at the sheriff's sales; insisted that the sale by the assignee in bankruptcy was void, because made without an order of the bankrupt court; and alleged that Cox had always claimed his homestead exemption in the lands, and had given due notice of his claim. "Having now fully answered the said somewhat remarkable bill, and willing to waive its palpable defects of multifariousness and argumentativeness, and submitting to the jurisdiction of the court," they then asked that their answer might be taken as a cross-

bill, and that the deeds from the sheriff and the assignee in bankruptcy might be cancelled and declared null and void, as a cloud on their title to the lands.

The answers were filed on the 24th September, 1872. On the 16th November, 1872, a demurrer was filed by Shaw and Cox jointly, for want of equity, and for multifariousness; and on the same day a demurrer was filed by Latham and Shelton, jointly and severally, for want of equity, for multifariousness, and because they were improperly joined as parties to the bill. At the January term, 1873, the demurrers were heard, and overruled; and afterwards, on final hearing on pleadings and proof, a decree was rendered for the complainant, in accordance with the prayer of the bill. The overruling of the demurrer, and the final decree of the chancellor, are now assigned as error.

M. L. STANSEL, and H. S. SHELTON, for appellants.—1. The bill presents a clear case of multifariousness, for which it should be dismissed by the court.—*Hardin & Williams v. Swoope,* 47 Ala. 273–78; *Kennedy v. Kennedy,* 2 Ala. 573; *McIntosh v. Alexander,* 16 Ala. 87; Story's Eq. Pl. § 271; 1 Daniell's Ch. Pr. 385, mar.

2. Cox's right to a homestead is clearly shown. The land which he claims was not embraced in the deed to Shelton, and only forty acres of it was sold by the sheriff. His affidavit and claim of exemption were duly made and filed. The assignee could not sell it, if he had attempted to do so.— Bump on Bankruptcy, 332; James on Bankruptcy, 33, 58.

WATTS & WATTS, *contra.*—1. The objection on account of multifariousness was expressly waived in the answers of Shaw and Cox, and it could not be afterwards raised by demurrer filed without leave of the court.—1 Brickell's Digest, 782, § 134; *Ib.* 753, § 1689; *Betts v. Betts,* 18 Ala. 787; 22 Ala. 115; 45 Ala. 161.

2. The claim of homestead exemption was waived and forfeited, under the authority of *Bell v. Davis,* 42 Ala. 460.

BRICKELL, C. J.—The bill was filed to quiet the title of the appellee, to lands therein described, which he claims to have purchased at sheriff's sale under an execution in his own favor, against the appellant Cox, and at sales made by Lang, the assignee in bankruptcy of Cox, and to enjoin an action of ejectment commenced by the appellant Shaw, for the recovery of a part of the land; and a statutory real action commenced by Cox, for the recovery of a part claimed as a homestead. The bill was answered by Cox and Shaw

jointly, expressly waiving the objection of multifariousness, and they filed a cross-bill for relief. Subsequently, they interposed a demurrer, assigning as causes, not only multifariousness, but a want of equity in the original bill. The demurrer was overruled, but on what ground is not shown by the record; and no objection to its regularity, or to the time of filing it, appears to have been made. It is now insisted in argument, that the demurrer was irregular, having been filed after answer, without leave of the court, and was properly overruled, without regard to its merits.

1. The rule of practice, in courts of law, which has obtained in this State from an early day, is, that an objection to the time of filing a pleading must be taken by a motion to strike from the files, and, if not taken in that mode, must be deemed waived.—*Holley v. Younge,* 27 Ala. 203 ; *Hart v. Turk,* 15 Ala. 675 ; *Sadler v. Fisher,* 3 Ala. 200. A similar rule obtains in courts of equity ; and if a demurrer was filed with an answer, which, prior to our statute, was irregular, the answer overruling the demurrer, the practice was, not to overrule the demurrer, but on motion to strike it from the files. 1 Dan. Ch. Pr. 592. The statute authorizes the incorporation of a demurrer in an answer ; and after answer, without incorporating a demurrer, it is irregular, without leave of the court, to file it separately. The statute of amendments, in equity, is very broad and liberal ; and the court would be bound, on application, to permit the demurrer to be incorporated in the answer, at any time before final decree.—Code of 1876, § 3790. Proceeding to a hearing on demurrer, filed subsequent to, and not with the answer, is a waiver of the irregularity. The merits of the demurrer must, therefore, determine the correctness of the decree overruling it.

2. A purchaser of lands, at a sale under execution, acquires the estate, or the interest of the defendant, which the law authorizes to be levied and sold ; no other, and no greater estate or interest. The statute subjects to levy and sale an equity of redemption, a perfect equity, the defendant having paid the purchase-money, a legal title, or a vested legal interest in possession, reversion, or remainder, whether it is an entire estate, or held in common with others.—Code of 1876, § 3209. It is apparent that Cox, the defendant in execution, had, at the time the record of the judgment against him was substituted, and at the time of the issue and delivery of execution to the sheriff, merely an equity of redemption in the lands. The deed of trust to Shelton was a conveyance of the entire legal estate, without reservation to Cox of the right to possession until default was made in the

payment of the secured debt. If he remained in possession after its execution, he was simply the tenant at will of the trustee, and without any legal interest, or a legal right to possession, subject to the lien of an execution against him. The equity of redemption—the right to restore himself to his original estate—was all that remained in him; and this, under the statute, was subject to execution. But, before the sale by the sheriff, Cox having made default in the payment of the debt secured, and the event having happened on which the trustee was empowered to sell the lands in pursuance of the terms of the deed, he made a sale. The sale as effectually divested Cox of all estate and interest in the lands—as effectually cut off the equity of redemption, as would a decree of foreclosure in a court of equity.—2 Wash. Real Prop. 78; 4 Kent, 159; *Childress v. Monette*, 54 Ala. 317. All that remained to him, or to his judgment creditors, after the sale, was the statutory right and privilege of redemption from the purchaser.

3. The bill proceeds in its averments, however, to assert that Cox, notwithstanding the sale by the trustee, had a perfect equity in the lands. The equity is supposed to arise from the facts, as alleged, that the lands, though nominally purchased by Latham, for Shaw, were in fact purchased for Cox, and that the purchase-money was paid by Cox giving a lien on the crops growing on the lands. Passing over all the numerous allegations of fraud, the bill very clearly shows that Latham had not been paid the purchase-money, when the sale and conveyance was made by the sheriff. The payment, it avers, was made subsequent to that sale and conveyance; and it has no retroactive operation, so as to enlarge the interest which the sheriff had authority to sell. The *perfect equity*, which the statute subjects to levy and sale under execution at law, is of one class only—that of a vendee, who has *paid the purchase-money*. There may be other equities of equal dignity, standing on as high ground, and as easily enforced in courts of equity, and yet not subject to levy and sale under execution at law. The subjection of equitable interests, or estates, to sale under legal process, was, prior to the Code, expressly prohibited by statute.—Clay's Digest, 350, § 31. The equity of a vendee, in possession, who had fully paid the purchase-money, though perfect, the bare legal title outstanding in the vendor, which he had covenanted to convey on the event which had happened—the payment of the purchase-money—could not be sold under execution at law, though the legal estate could be, and the purchaser could recover on it against the vendee, compelling him into a court of equity for a specific performance.—*Driver v. Clarke*, 13

Ala. 192; *Elmore v. Harris, Ib.* 360; *Nickles v. Haskins,* 15 Ala. 619; *Hogan v. Smith,* 16 Ala. 600. The estate of the vendee, though equitable, in such case, comprehended the entire beneficial interest. Converting it into a legal estate, the vendee could delay, and thereby embarrass and delay his judgment creditors, by compelling them to the more expensive and dilatory proceeding of a bill in equity to subject it. Without subjecting all equities to execution at law, the equity of the vendee who has fully paid the purchase-money, termed in judicial decision, and in other statutes, a *perfect equity,* is subjected. The equity is inchoate, imperfect, until the purchase-money is paid; and that being unpaid when the sale was made by the sheriff, though it may have been subquently paid, the appellee acquired no interest in the lands.

4. The right and power of an assignee in bankruptcy, to sell and convey the estate of the bankrupt, depends entirely on the statute. A sale and conveyance made by him, in any other mode than that which is prescribed by the bankrupt law, is a mere nullity, conveying no title. Not adverting to any other objections to the title the appellee claims to have derived from the assignee in bankruptcy of Cox, it is shown by the bill that the title to the lands conveyed originally to Shelton was in dispute, being claimed by Latham and Shaw, and by the appellee, and had never passed into the possession of the assignee. An assignee in bankruptcy can not sell property in dispute, except under an order of the court of bankruptcy, made on his petition, after notice to the parties claiming adversely. No such order was obtained, and the sale and conveyance passed no title to the appellee.—Bump on Bank. 9 ed. 569. It results, that the appellee is without title, legal or equitable, to the parts of the land embraced in the action of ejectment commenced by Shaw.

5. A court of equity, unless in a case free from doubt, and of some peculiar equity, will not restrain a plaintiff in ejectment from prosecuting an action at law on the legal title. High on Inj. 182. Nor will the court interfere, when the title of the plaintiff, and of the defendant as claimed, is purely legal, and the ground relied on for relief is available as a defense at law.—Ib. Without inquiring into the validity of the claim of Cox to a homestead, or whether the claim was asserted at the proper time, and in the proper manner, to preserve and perfect the right of exemption, it is enough to say, if they were not, the defense at law is complete, and being complete, there is no reason for the interference of a court of equity.

The decree of the chancellor must be reversed, and a de-

cree here rendered, dissolving the injunction, and dismissing the bill; and the appellee must pay the costs of this court, and of the Chancery Court.