# Smith's Executor *v.* Cockrell.

*Bill in Equity by Judgment Creditor, as Purchaser at Sheriff's Sale, against Widow and Children of Deceased Debtor, as Fraudulent Grantees.*

1. *Cancellation or return of deed.*—When a deed has been delivered to the grantee, and been accepted by him, its return to the grantor, and the execution of a new deed to the grantee's wife, do not affect the title, which still remains in the grantee.

2. *Removal of cloud on title to land ; when purchaser at sheriff's sale can not ask.* A purchaser of lands at sheriff's sale, under execution against the holder of the legal title, has a complete and adequate remedy by action at law ; and therefore can not, before recovering the possession by action at law, maintain a bill in equity to set aside, on the ground of fraud, and as clouds on his title, conveyances effected by the debtor in favor of his wife. (SOMERVILLE, J., *dissenting*.)

3. *Sale of lands under execution ; what is "perfect equity."*—The "perfect equity" in lands, which the statute declares subject to levy and sale under execution at law (Code, § 3209), is that of a purchaser who has made full payment of the purchase-money, but who has not received a conveyance : the statute does not extend to the interest of a purchaser who, having paid the purchase-money, takes a conveyance of the title to his wife.

4. *Equitable relief to creditor, against fraudulent conveyances by deceased debtor.*—A judgment creditor may maintain a bill in equity, against the wife and children of his deceased debtor, to set aside conveyances fraudulently effected by the debtor in his life-time (Code, §§ 3882, 3886) ; and he may have this relief under the general prayer, although his bill may be wanting in equity under the special prayer, asking to have the deeds set aside as clouds on his legal title before recovering the possession at law.

5. *Homestead exemption ; in lands conveyed to wife.*—As against creditors of a deceased debtor, a homestead exemption may be claimed by his wife and children, in lands which he bought in his life-time, although the conveyance of title was made to the wife, and the creditors seek to set it aside as fraudulent.

6. *Same ; by what law determined, and extent in 1865.*—The right to a homestead exemption, and its quantity and extent, as against creditors, are to be determined by the law which was in force when their debts were created ; and where the debt was created in 1865, the value of the homestead then allowed being $500, a homestead can not be claimed under the law of 1867, which allowed $1,700.

7. *Same ; allotment by commissioners.*—An allotment of a homestead by commissioners under the act of 1867 (Rev. Code, § 2884), allowing a retroactive operation to the law as against an execution creditor whose debt was contracted in 1865, is not binding on the creditor, when no notice of the proceeding is given to him ; and it is the duty of the sheriff, having knowledge of the facts, to sell under the execution notwithstanding such allotment.

VOL. LXVI.

[Smith's Executor v. Cockrell.]

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 15th July, 1875, by Addison G. Smith, as the executor of the last will and testament of Joseph A. Smith, against the widow and children of Robert Johnson, deceased; and the widow having died pending the suit, it was revived against A. W. Cockrell, as her special administrator *ad litem*. The special object and prayer of the bill was to set aside on the ground of fraud, and as clouds on the complainant's legal title under a purchase at sheriff's sale, conveyances of lands which said Robert Johnson had procured and effected in the name of his wife; or, if the defendants should be held entitled to any homestead exemption, or other interest in the lands, to have the same ascertained by the decree of the court, so that the lands might be sold for the satisfaction of the debt due to the complainant; and the general prayer, for other and further relief, was added.

The complainant's testator obtained a judgment against said Robert Johnson on the 19th October, 1872, in the Circuit Court of said county, for $7,227.63; the suit having been commenced, and an ancillary attachment sued out, on the 15th September, 1865. The attachment was levied on certain personal property, a tract of land described as the "Chapman plantation," and "the house and lot in Livingston on which said Robert Johnson lives, with the tract of land attached, which he claims, formerly owned by P. G. Nash." The property described as the house and lot in Livingston, with the lands attached, according to the allegations of the bill, "constituting one tract really, embracing the town property and adjoining lands, and forming a residence and farm of about one hundred acres," was purchased partly from P. G. Nash, and partly from William Lockard; and this is the only property involved in the suit. On the rendition of the judgment, an execution was issued thereon, which was levied on said tract of land, and also on the Chapman plantation, and also a *venditioni exponas*. "At the time of said levy," as the bill alleged, "the real estate therein described was the property of said Robert Johnson: he had already obtained a deed from said P. G. Nash, to the part described as formerly owned by said Nash; yet, with the fraudulent purpose of preventing the said Joseph A. Smith from collecting the debt sued for, he obtained from said Nash a deed to his wife, Mrs. Martha Johnson, she assenting to the arrangement, executed after the levy of said attachment, and reciting the consideration as paid by her. With the like purpose and intent, and also with the concurrence of the said Martha, he procured

(5)

from said William Lockard a deed to her, to the house and
lot on which he resided, although the same was purchased by
his own means.   The said Martha paid nothing whatever for
said property, and never did own anything, except what she
derived from the bounty or fraud of her husband."   Copies
of the said deeds from Nash and Lockard to Mrs. Johnson
were made exhibits to the bill.   The deed of Nash, in which
his wife joined, and which was dated the 11th October, 1866,
was only a quit-claim deed, and recited, as its consideration,
the payment of $7,200, " in the fall of the year 1864, in treas-
ury-notes of the Confederate States ; " and a memorandum
at the foot of it, signed by said Nash, and made with a view
to the stamping of the instrument, recites that " the value of
the consideration at the time it was paid, in currency, was
less than $500."   The deed of Lockard was dated the 1st
January, 1864, and recited, as the consideration, the pay-
ment in hand, by Mrs. Martha Johnson, of $4,000, and con-
veyed the land to her with the usual covenants of warranty.

On the 28th January, 1873, after the levy, and before the
sale of the lands under the complainant's execution, the said
Robert Johnson, the defendant in execution, died ; and the
bill alleged that he was insolvent at the time of his death,
and that no letters of administration were ever granted on his
estate.   On the 10th March, 1873, after the death of said
Johnson, and after the levy of said execution on the lands,
but before the sale thereof, Mrs. Johnson filed her affidavit,
and claimed the lands now in controversy, as her statutory
separate estate under the said deeds from Nash and Lockard,
and also a homestead exemption in them for herself and chil-
dren, on the ground that they were the homestead and resi-
dence of said Johnson at the time of his death, and were
not worth more than $1,700.   On the filing of this affi-
davit and claim, the sheriff indorsed on it, or on the execu-
tion (the record does not show where the indorsement was
made), that he had summoned three disinterested freeholders,
citizens of the county, naming them, " to set apart for the use
and -benefit of the family of said defendant in execution,
Robert Johnson, the exemption allowed by law, herein
claimed."   The commissioners so appointed made report to
the sheriff that, under their appointment, they had set aside
" seventeen hundred dollars worth of said real estate, being
all the lands of said Johnson embraced in this levy in
this case, lying north of the Sucarnatchie river, and east of
the Livingston and Chiles' Mill road."   The report is without
date, and the sheriff's indorsement is without date, as is also
his return in these words : " Returned for the instructions of
the court in allowing the within exemptions in the premises ;"

and the record does not show whether this return, as it is called, was indorsed on the execution, or on the report of the commissioners. On the 7th April, 1873, the sheriff sold all the lands under the levy, and made return of the execution, but without date, in these words: " In pursuance of the within annexed advertisement, I proceeded on the 7th April, 1873, to sell the lands therein ; the plaintiff insisting and demanding that all of the lands advertised, including the part set apart by appraisers as exemption to the family of defendant, on the application of the widow, he being dead, as per report herewith returned to court, should be sold ; which said lands were purchased by the plaintiff in execution, for the sum of seventy dollars, which amount, so bid, has been paid."

Having made the sale, the sheriff applied to the court, at the next ensuing term, " for instructions in the matter of the sale of lands as the property of Robert Johnson." The motion itself, after stating the case, thus proceeds: " The said sheriff prays the guidance and protection of the court, in the following particulars: The order under which he made said sale did not provide for any exemption in the land sold ; and the plaintiff urged, under threat of holding him responsible, that the whole of said lands should be sold ; which was accordingly done on the 7th April, 1873, and bid off for the sum of $70. The widow, Mrs. Martha Johnson, made application, before said sale, for exemptions allowed by law for herself and the family of said Robert Johnson, to be set aside to her and her children; and the exemptions were accordingly laid off by commissioners appointed by him ; and the said widow insisted upon her rights, and that of the family of the defendant (?) should be respected, and that portion of the land so set off should not be sold; so that this sheriff, being uncertain as to his duties in the premises, and being in peril both from the plaintiff and the said widow, on account of these conflicting claims and mistakes in said lands, determined to sell all of said lands, but to withhold the conveyance thereto until the court should consider the questions arising in the matter, and give such instructions, and make such orders in the premises. as will protect him as an officer of this court. And he now files herewith the execution and order of sale, the claim of exemption filed by the widow, and all the papers and records in the premises ; and prays the court to cause the said Martha Johnson and the said Joseph A. Smith to appear and interplead with each other, so as to settle and determine the rights of each in the premises, and protect and hold him harmless," &c. Notice of this motion was given to Mrs. Johnson, but the record does not show that any notice

was given to the plaintiff. At the April term, 1874, an order was entered in the matter of the motion, as follows: "It appearing to the court that the sheriff has made a deed to J. A. Smith, and that the party purchasing has since died; it is ordered that *sci. fa.* issue to the representative of said Smith, to appear and show cause why the deed should not be set aside." The executor appeared, in answer to the *sci. fa.*, and filed an answer; and at the April term, 1875, at his instance, the motion was dismissed.

A copy of Mrs. Johnson's claim to the lands was made an exhibit to the bill, and the following allegations were made in reference to it and the allotment: " The said Martha procured what purported to be the report of commissioners on exemptions, setting over to her the entire land now in dispute, embracing the tract derived from the said Nash and Lockard, as of the value of $1,700. The sheriff disregarded said pretended allowance, and proceeded to sell said lands; and your orator insists that the said Robert and Martha Johnson, having procured said deeds from Nash and Lockard to be made to her in fraud of your orator's testator, as above set forth, no exemptions whatever could be claimed by her; and that the claim which she interposed to the sheriff, of the separate estate, was made under oath, and she is therefore precluded from any claim of exemptions. Nevertheless, she is now in possession of said lands, and has been in possession ever since said sale, claiming them as her own separate estate, and also for herself and children, as exempt property, they all residing thereon; and your orator insists that, if there could have been any claim of exemption for said children, then minors, it could have been for only $500 in value. But what is their precise claim, in view of the conflicting claims of their mother, your orator can not now ascertain, without the intervention of this honorable court. The cash value of said lands was largely in excess even of the $1,700 valuation of the exemption. With the present cloud upon the title, your orator can not proceed to sell said land by order of court, for division among heirs or devisees, or otherwise, for any thing like their fair value; nor could he, if successful in a suit at law for possession against said Martha, who claims under the deeds from said Nash and Lockard, hold the land without a cloud on account of the claim of the said children." The bill prayed, therefore, that the deeds from Nash and Lockard to Mrs. Johnson might be declared fraudulent and void, as against the complainant's rights; that the cloud on the title to the lands might be removed; that the defendants be required to propound their claims and rights to the lands, and their right of exemption, if any, be

ascertained and determined, the complainant offering to pay its value; that the value of the rents, during the defendants' occupation, be deducted from the ascertained value of their exemptions; and for other and further relief, under the general prayer.

An answer to the bill was filed by Mrs. Johnson, denying the allegations of fraud, asserting the validity of the deeds from Nash and Lockard, and insisting on the conclusiveness of the action of the commissioners allotting the exemption in the lands; a copy of which, with the proceedings connected with it, was made an exhibit to her answer. A demurrer was incorporated in the answer, assigning as grounds of demurrer—1st, that the complainant, if the claim asserted by him was valid, had a full, complete and adequate remedy at law; 2d, "that the bill seeks to enforce a judgment at law against a decedent, alleged to be insolvent, against lands upon which no levy was made in the life-time of the decedent;" 3d, "because it seeks to establish, as a valid conveyance, a deed of lands executed by the sheriff, upon a sale made after the death of the decedent, without *scire facias* to the heirs, or other revivor of process;" 4th, "because it seeks to establish the validity of a conveyance of lands, made upon a sale thereof by the sheriff, after said lands had been set apart and exempted as a homestead, by commissioners duly appointed by the sheriff to allot said exemptions, which said return of said commissioners remains in full force." This answer and demurrer were adopted by the other defendants.

The case being submitted to the chancellor, "for decree in vacation upon the demurrer to the bill," he held that the action of the commissioners in the allowance and allotment of the exemptions was conclusive, in the absence of an allegation and charge of fraud in their action; and he therefore sustained the demurrer, and dismissed the bill. The chancellor's decree is now assigned as error.

Thos. B. Wetmore, and R. Chapman, for appellant.

Snedecor & Cockrell, *contra*.

SOMERVILLE, J.—The rights of the appellant, in this case, are based upon a claim of title acquired by his testator, Joseph A. Smith, at a sheriff's sale of certain lands made on April 7, 1873, in which appellees set up a right of homestead exemption. The purpose of the bill is to have two deeds, one made by Nash, and the other by Lockard, declared fraudulent and void; each conveying land to the wife of one Robert Johnson, at the latter's procurement, he having ad-

vanced the purchase-money, and had the deeds made by the grantors directly to her. These deeds are prayed to be cancelled, as a cloud on complainant's title ; and it is sought to have the conflicting interests of the complainant, and the widow and children of defendant's intestate, adjusted in reference to their right of exemption in the said lands purchased at sheriff's sale. The prayer for general relief is also added.

The land conveyed by Nash and wife, to Mrs. Johnson stands in a different attitude from the Lockard tract. If the, statements of the bill be presumed to be true, as they must be on demurrer, the legal title of this land was vested in Robert Johnson at the date of the levy of the attachment, by prior conveyance made to him. The redelivery of the deed would not operate to divest the title.—*Kimball v. Greiy*, 47 Ala. 230. The testator of complainant, who purchased at sheriff's sale, acquired the legal title of this tract by reason of such purchase. He could clearly maintain an action of ejectment at law. The question in this case is, would such an action afford the complainant a remedy, *full, complete and adequate for all purposes ?* A majority of the court concur in the affirmative of this question, and give their opinion in a clear and elaborate review of the whole subject. From this opinion I feel impelled to dissent, for the following reasons :

*Fraud*, in my opinion, is one of the most ancient and important branches of chancery jurisdiction. It is justly regarded, by all courts of justice, as a most odious thing, and so evasive and intangible are its protean shapes, that no one, from the day of Lord Eldon down to the present time, has ever dared attempt to accurately define it. I consider it, therefore, highly impolitic to attempt to circumscribe equity jurisdiction in all matters of this nature.

It is said in Adams' Equity, that the jurisdiction for rescission and cancellation arises where a transaction is vitiated by fraud, as one of the several grounds, and it is added : " The avoidance of transactions on the ground of fraud is a copious source of jurisdiction in equity. With respect to fraud used in obtaining a will, this jurisdiction does not exist." *Ib.* 174–5.

Judge Willard, in his work on Equity Jurisprudence, asserts that fraud is " a branch of jurisdiction which courts of equity exercise concurrently with courts of law." " This jurisdiction," he says, " is probably co-eval with the establishment of the Court of Chancery, and was originally exercised only in cases where there was no remedy by the ordinary course of law."—p. 145. Again : " In cases where fraud is not *penal*, equity has concurrent jurisdiction with courts of

law, except in fraud in obtaining a will."—p. 145. Mr. Story, in his Equity Jurisprudence, styles fraud as an "important head of concurrent jurisdiction in equity," and says: "It is a rule, subject to few exceptions, that courts of equity exercise a general jurisdiction in cases of fraud, sometimes concurrent with, and sometimes exclusive of other courts." § 184. In Kerr on Fraud and Mistake, p. 43, it is said: "Courts of equity have an original, independent and inherent jurisdiction to relieve against every species of fraud, not being fraud of a penal nature." The single exception made is fraud in obtaining a will.

Many of our most learned jurists have given the sanction of their authority to this view, in opinions of this court. In *Sheppard v. Iverson*, 12 Ala. 97, GOLDTHWAITE, J., says: "Fraud is one of the original grounds upon which courts of equity have always considered themselves as entitled to entertain jurisdiction;" citing, to sustain the assertion, Daniells' Ch. Pr. 611, and Story's Eq. Jur. § 184. In *Planters' & Merchants' Bank v. Walker*, 7 Ala. 926 (945), COLLIER, C. J., says: "Fraud, it is said, is a fruitful source of equity jurisdiction. Sometimes, the wrong which it does can only be repaired, and justice administered, through a Court of Chancery; while, in other cases, it exercises a jurisdiction concurrently with law." It is said in *Wolff v. Shelton's Ex'r*, 51 Ala. 429: "Fraud, mistake and account, are grounds of the original and auxiliary jurisdiction of courts of equity."

While I insist on this principle, as thus enunciated, I am fully aware of the decision of this court in *Dickinson v. Lewis*, 34 Ala. 643, where the declaration is made, that fraud *alone* does not authorize a party to seek redress in chancery, if he has a plain, complete, and adequate remedy at law. But I take it as undisputed, that this proposition is to be confined to cases where no *other* ground for interference by a court of chancery is shown. This was directly declared in *Knotts v. Tarver*, 8 Ala. 743. It is admitted, also, as the settled doctrine of this court, that a person having the legal title to land, and being *out of possession*, can not file a bill for the removal of a cloud from such title, if this be the only ground upon which he seeks the aid of a court of equity.—*Arnett v. Bailey*, 60 Ala. 435; *Daniel v. Stewart*, 55 Ala. 278. In the latter case, it was said, that "the complainant must first recover the possession in an action at law."

In cases of this kind, where the outstanding fraudulent conveyance is left, after suit being brought, in the hands of an adverse party, I can not see that an action of ejectment at law would furnish a complete and adequate remedy. No remedy can be complete and adequate to the ends of justice,

[Smith's Executor v. Cockrell.]

which leaves a fradulent deed in the possession of the defendant, uncancelled, or unrescinded. It could well be used to depreciate the value of the property, and would still be *a cloud* on the title, as it could be again perverted to harass the true owner by future litigation.—*Tappan v. Evans*, 11 N. H. 311 ; 3 Wait's Act. & Def. p. 482, § 8 ; Kerr on Fraud & Mis. 332–3. And, I think, this conclusion is a proper sequence of the recognized doctrine, that principles of equity are not only remedial, but preventive of apprehended injustice.—1 Story's Eq. Jur. § 700.

The weight of authority unquestionably, in my opinion, favors this view, including both the text-writers and the adjudged cases. The only case favoring the adverse view, any where to be found, in English or American jurisprudence, is that of *Thigpen v. Pitt*, 1 Jones' Eq. (N. C.) 49, decided by the Supreme Court of North Carolina. Chief-Justice Nash there dissented from the opinion of the other two judges, and by the force and logic of his views greatly weakened their conclusions. On the contrary, the Supreme Court of Indiana, in *Frakes v. Brown*, 2 Black. (Ind.) 294, decided the same question unanimously the other way, taking the view which I have insisted on. The complainant had purchased at sheriff's sale, and could have sued in ejectment ; but he was allowed to go into equity to cancel a fraudulent deed, as a cloud on the title. The correctness of this decision in *Frakes v. Brown* was sustained by the Supreme Court of Iowa, in *Harrison v. Kramer*, 3 Clarke, Iowa, 543.

It is objected, as I understand, from the learned opinion of Mr. Justice STONE, speaking for the majority of the court in this case, that these cases were not considered at length. To my mind, this objection loses its force, in view of the simplicity of the elementary principles of equity which lie at the basis of the conclusion reached.

The case of *Leupold v. Krause*, 95 Ill. 440, a very recent decision rendered by the Supreme Court of Illinois, was essentially like the one under consideration at bar. The complainant had levied execution on premises fraudulently conveyed by husband and wife to a third person, who, in furtherance of the fraud, reconveyed to the defendant's wife. The complainant made sale of the premises, which were occupied as a homestead at the time, and became the purchaser, receiving a sheriff's deed. He filed a bill, while out of possession, and prayed to have the cloud removed from his title, and the conflicting rights of the parties adjusted. The court below granted the relief, and the decree of the chancellor was sustained on appeal to the Supreme Court. I admit that, under the decisions of the Supreme Court of

Illinois, where a homestead is sold under execution, the pur-chaser is not permitted to bring ejectment; but this is for the reason, that a court of law could not equitably adjust the rights of the parties in all such cases.

In *Bunce v. Gallagher*, 5 Blatch. (C. C. Rep.) 481, a bill in equity was sustained, as being one peculiarly of equitable cognizance, which was filed by the legal owner of land out of possession, to annul a forged deed, and have it cancelled as a cloud on complainant's title. In granting the relief prayed, the court said : " This cloud [the recorded deed] obscures the true state of the title, and is well calculated to lead to misap-prehension, embarrassment, and mistaken litigation. As the invalidity of the deed does not appear on its face, but can only be made apparent by extrinsic evidence, it is peculiarly the duty of a court of equity to sweep it away." See, also, *Hamilton v. Cummings*, 1 John. Ch. 317.

These opinions are concurred in by the learned author of Bump on Fraudulent Conveyances, who has, perhaps, inves-tigated this subject as thoroughly as any other American writer.—Bump on Fraud. Con. 520, note 9. He says, on page 508 : "The remedy most frequently used is a bill in equity, because a court of equity sifts the conscience of the parties, and removes the cloud from the title. Fraud constitutes the most ancient foundation of its jurisdiction, and is a sufficient ground for its interposition. It may grant relief, although there is an ample remedy at law ; for *no relief is adequate, ex-cept that which removes the fraudulent title*. The relief in equity is *different*, and may be *more beneficial* than that given by the law."

In *Abbey v. Bank*, 31 Miss. 434 (437), HANDY, J., speaks of the jurisdiction of a court of equity to set aside fraudulent conveyances, as " well established, and universally recognized by the practice of our courts." He adds : " These advantages of proceeding in equity, in such cases, as well as the well-established jurisdiction of that court, in all matters of fraud and unconscientious concealment, show that the remedy au-thorized by the statute is concurrent with the jurisdiction of a court of equity."

The Supreme Court of New Hampshire, in *Dodge v. Gris-wold*, 8 N. H. 425, says: " Every one, who is at all acquainted with the subject, knows that, in cases of fraudulent convey-ance of real estate, the remedy at law is not complete and adequate for all the purposes for which a plaintiff may claim relief, and bills in equity are now sustained in such cases everywhere."

The question which we are now considering is a novel one in this State, and has never been directly under review by

this court. But, I think, the entire spirit of our decisions is adverse to the North Carolina decision, so greatly relied on by the majority of the court. I refer briefly to a few of these.

In *Marriott v. Given*, 6 Ala. 694 (707), GOLDTHWAITE, J., says, in reference to trials of legal titles at law : "In relation to real estate, the same question [of title] was usually tried in action of ejectment by the purchaser under the sheriff, against the tenant in possession, claiming under the disputed title. Independent of these modes of ascertaining the fact of fraud by a legal suit, the creditor was permitted in equity to set aside the fraudulent conveyance as an obstruction to his legal right."

*Ray's Adm'r v. Womble*, 56 Ala. 32, 37, was a bill filed to set aside a sheriff's sale of lands made under execution, and cancel the sheriff's deed to the purchaser, as a cloud on the title, and to enjoin an action at law on the deed. A demurrer was interposed, on the ground, among others, that the complainant had a plain and adequate remedy at law. It was admitted that the Circuit Court unquestionably had power to vacate the sale of the lands ; but it was further said : "The power of the court of law would be exhausted, when the sale was vacated. *The deed would remain in the possession of the purchaser*, and could, at any time, be used as evidence by him in an action for the recovery of the lands, compelling the complainant, or those claiming under him, to introduce the evidence of the vacation of the sale, to repel its operation and effect as evidence of title. *The remedy at law is not, therefore, adequate*, and a court of equity had jurisdiction of the case made by the original bill."

The case of *Waddell v. Lanier*, 62 Ala. 347, was a bill filed by an administrator, against the heirs of his intestate, who were in possession, seeking the cancellation of a deed of gift made by such intestate ; the relief sought being based on the allegation, that its execution was procured by fraud and undue influence, and was therefore voidable. In this case, BRICKELL, C. J., said : "It is no objection to the exercise of the jurisdiction, in the particular case, that there may also be a concurrent remedy at law. The cancellation of the conveyance, which a court of equity alone can decree, and an adjustment in the same suit of matters of account, which necessarily exist in nearly all cases of this kind, render the remedy in equity more adequate than any which can be pursued at law."

In *Lockett v. Hurt*, 57 Ala. 198, a bill was sustained, which was filed by an administrator out of possession, for the purpose of setting aside a sheriff's deed as a cloud on the title of

the intestate's lands ; the deed, it is true, being considered only voidable, and not absolutely void.

I believe the tendency and spirit of these decisions are in harmony with the views expressed in this opinion. I am of opinion, that where a creditor has elected to levy upon real estate, fraudulently conveyed by the judgment debtor, and becomes the purchaser at sheriff's sale, he ought not to be driven to his action at law, because his redress there is not full and adequate.—*Boyce v. Grundy*, 3 Pet. 377 ; *Johnson v. Hendley*, 5 Munf. 219 ; *Henshaw v. Atkins*, 2 Root, 7 ; Kerr on Fr. & Mis. 47. I concur with the assertion of Chief-Justice SHAW, in *Gerrish v. Mace*, 9 Gray, 235, which he made in reference to a mere equitable title, and which NASH, C. J., in *Thigpen v. Pitt, supra*, applied as well to the purchaser of legal titles—viz. : " The purchaser would *take the right to avoid all fraudulent conveyances and incumbrances*." I think it extremely hazardous to the administration of justice, to curtail or embarrass this potent and necessary jurisdiction of courts of chancery in matters of fraud, which courts of equity especially should always abhor as nature does a vacuum.

The other land, mentioned in the bill as being conveyed by William Lockard to Mrs. Johnson, occupies entirely another *status*. This tract includes the lots on which the homestead is situated, and the purchase-money expended for it was paid by the defendant in execution, Robert Johnson. Whether an interest of this character constitutes such a " perfect equity " within the meaning of section 3209 of the Code (1876), as to be the subject of sale under execution, was left undecided by Mr. Justice STONE, in *You v. Flinn*, 34 Ala. 409. We adopt the conclusion reached, on this subject, by BRICKELL, C. J., in the case of *Shaw & Cox v. Lindsay*, 60 Ala. 344, where, in construing this section of the Code, he says : " The *perfect equity*, which the statute subjects to levy and sale, under execution at law, is of one class only—that of a *vendee*, who has paid the purchase-money." This construction better harmonizes with the general spirit of our previous judicial decisions, and with a sound public policy, which disfavors that sacrifice of a debtor's property, that always follow the subjection of imperfect titles to forced sales under the hammer of the sheriff, as strikingly illustrated in this particular case. Our conclusion necessarily is, that the interest in these lands, which was sold, and purchased by complainant's testator, not being subject to levy and sale, he acquired by such purchase no title, legal or equitable.

We are of opinion, however, that the facts stated in the bill are, under the general prayer for relief, sufficient to give the complainant standing in a court of equity as a *creditor*,

seeking to subject to the payment of his debt the property of a debtor alleged to have been transferred in fraud of his legal rights, and contrary to the provisions of the statute. Code (1876), §§ 3882, 3886.

The right of the creditor, in such cases, is usually to have a trust in the land declared in his favor, and have it subjected to satisfy his claim, unless obstructed in the enforcement of such equitable remedy, by the interposition of some valid defense.

It is objected, that the title of this land being in Mrs. Johnson, no homestead exemption can be claimed in it for the family. This fact would not preclude the claim, if it be otherwise allowable. In such cases, equity treats the conveyance as having been to the husband, and protects the family in any lawful claim of exemption.—Thompson on Homestead & Ex. § 411; *Edmonson v. Meacham*, 50 Miss. 40.

The question is raised as to the force and effect, as against an execution creditor, of an allotment of a homestead made by commissioners, appointed by the sheriff under the authority of section 2881 of the Revised Code of Alabama. This section, which was in force on April 7, 1873, the date of sale, provides as follows : " The value of the real property must be ascertained by three disinterested freeholders, to be summoned by the sheriff for that purpose, who must be sworn to make the valuation fairly, and, if necessary, must set off the lands by metes and bounds, and are entitled to two dollars a day, to be paid by the defendant in execution."

There is no method provided for excepting to the report of these freeholders, nor is any notice required to be given to the plaintiff in execution, unless we construe it to be demanded, by necessary implication, in the teeth of statutory silence. *Wilburn v. McCalley*, 63 Ala. 436.

It is readily conceded, that there may be many cases where an appraisement and allotment of this kind would be conclusive, especially where the statute authorizing them provides for proper notice to, and the filing of exceptions by, the plaintiff in execution. It may be, that, in such cases, his failure to except to the report of the commissioners would be such acquiescence as would be conclusive against any subsequent collateral assailment of its validity.—Thompson on Homestead & Ex. §§ 667-68, 919.

The debt, in this case, was created in 1865, or earlier, and the exemption allowed should have been governed by the law in force at the date of its creation.—*Nelson v. McCreary*, 60 Ala. 302; *Garner v. Bond*, 61 Ala. 84; *Kelly v. Garrett*, at the present term. The commissioners allowed the exemption under the act of Feb. 19, 1867, which was embodied

[Smith's Executor v. Cockrell.]

in section 2884 of the Revised Code. This act increased the homestead exemption, from five hundred to twelve hundred dollars *additional* in valuation, or a total of seventeen hundred dollars, and was enacted posterior to the creation of the debt. The allotment made was, then, an attempt to apply the new exemption law to an old debt, to which it was inapplicable ; because such law would be unconstitutional and void, so far as it affected debts contracted anterior to its passage. The commissioners could not lawfully make it retrospective, which they obviously attempted to do in their report. The sheriff had knowledge of these facts, and it was his duty to sell under the execution, notwithstanding the exemption set apart by the commissioners. Their action was not conclusive, under the circumstances, and the chancellor erred in so holding.—Thompson on Homestead & Ex. § 673 ; *Wheeler v. Redding*, 55 Ga. 88.

We prefer to confine the principle enunciated in this decision to cases where no notice of the allotment is provided for, or given to the plaintiff in execution, and where no method of exception to it is specified in the statute which authorizes it.

The conclusion, as reached above, is not in conflict with *Jones v. De Graffenreid*, 60 Ala. 145 ; nor with *Wilson v. Brown*, 58 Ala. 62. In the latter case, the sheriff discharged a levy on certain lands, upon affidavit of exemption being made by the defendant in execution. He was held not to be liable for failure to make the money, because it was not shown that he had *notice* of the fact that *the judgment debt was older than the law* under which the exemption was claimed. In *Wheeler v. Redding*, 55 Ga. 88, in a similar case, the sheriff was held liable, on the ground that he *did have such notice* from the face of the execution which was in his hands for collection, and that it was his duty to have proceeded to sell, notwithstanding the previous allotment of the land levied on, as exempt under the homestead laws of that State.

The chancellor having thus erred, both in the decree rendered, and in sustaining the demurrer interposed to the bill, the judgment is reversed, and the cause remanded, for further proceedings in accordance with this opinion.

STONE, J.—It is sometimes said, that fraud is one of the grounds of equity jurisdiction. WALKER, C. J., in *Dickinson v. Lewis*, 34 Ala. 38, said : "Fraud is, of itself, a ground of equity jurisdiction." He immediately qualified it, however, by adding, "this rule is not universal in the jurisprudence of England, or in any of the United States." We apprehend this is an inaccuracy, and that fraud, of itself, is never

a distinctive ground of equity jurisdiction: that is, it is never, of itself, a foundation which will uphold a bill in equity. "On the contrary, fraud is, in many cases, cognizable in a court of law."— Story's Eq. Jur. § 60.

In *Sadler v. Robinson*, 2 Stew. 520, this court said : "On what ground, then, the appellees ask the interposition of equity, we are unable to comprehend. It can not be because they charge their vendor with fraud ; for every circumstance alleged as fraudulent, could it avail them, is fully examinable at law." In *Knotts v. Turver*, 8 Ala. 743, it was said : "No matter how gross the fraud may be, if the party can have full, complete, and adequate redress at law, he can not go into a court of equity."—See, also, *Russell v. Little*, 28 Ala. 160.

That courts of equity adjudicate and relieve against fraud, can not be doubted. Nor can it be questioned that courts of law hear and determine controversies in which fraud *vel non* is the controlling inquiry. Each court, in such cases, hears evidence, and finally determines the issue, according to its own form of proceeding; but the character and measure of proof, and the effect of the judgment in determining the controversy, are substantially the same.—Story's Eq. §§ 59, 184. "In a great variety of cases, fraud is remediable, and effectually remediable, at law."—*Ib.* § 184. What we mean to affirm is, that while fraud, when raised in a cause, is alike cognizable in either forum, it can not, unaided, be the ground or foundation of a bill in chancery, in any case.

Courts of law, and courts of equity, by reason of their several organisms, have very different powers of relief. The one is bound down by fixed rules, and can generally do nothing more than award a general judgment for plaintiff or defendant, and enforce it by execution against the property of the unsuccessful litigant. The other can mould and qualify the relief it grants; can grant it in part, or upon condition; can act on the person, and compel or restrain action, and, by attachment and imprisonment of the person, coerce obedience to its orders. The one acts only on legal titles presented, and pronounces them valid or invalid. The other creates, removes, or destroys legal titles, when such remedial powers are necessary for the maintenance and protection of ascertained equities. Now, it is not the question of fraud, which gives to the Chancery Court its jurisdiction in such cases. It is the character of relief which the exigencies of the case call for. If, when the alleged fraud is proved and found, all the plaintiff can claim follows as a legal consequence, then he has a complete and adequate remedy at law, and there is no use for the powers of the Chancery Court.

In such case, if there be nothing more in the transaction, the Court of Chancery has no jurisdiction. If, on the other hand, something more be required, after ascertaining the fraud, to put the plaintiff into full possession and enjoyment of his rights, then the powers of the Chancery Court may be successfully invoked.

It is not our intention, in what we have said, to bring in question the large, remedial powers of equity, in cases of fraud. It can convert a perfect equity into a legal title; can remove a legal incumbrance for the preservation of a paramount equity; can, in proper cases, marshal and adjust conflicting claims; can subject to debts property conveyed in fraud thereof; can in many cases enjoin and restrain conveyances that would operate a fraud on others, and can exercise many other powers, not necessary to be here enumerated. It can also relieve vendors or purchasers from the obligation of contracts concerning realty, into which they have been drawn by fraud; and, at the instance of one in possession, will remove a cloud from his title to real estate, which impairs its market value, or may, some day, be the foundation of a suit against him. This last, on the ground that one in possession can not test the strength of the adversary, outstanding title by suit at law; and it is unreasonable that the title should remain under the cloud, until it suits the convenience or caprice of another to assail it.—*Plant v. Barclay*, 56 Ala. 561; 1 Brick. Dig. 662; *Gunn v. Harrison*, 7 Ala. 585; 1 Sto. Eq. Jur. § 700, and note.

The complainant avers that under an execution at law he purchased the lands in controversy, and received the sheriff's deed therefor. He alleges that, before his lien and right as a purchaser attached, the defendant in execution had the legal title to this part of the lands in controversy, and caused the title to be conveyed to his wife, without consideration, and with intent to delay, hinder and defraud his creditors. The purpose of the bill is to vacate and remove this alleged incumbrance on the title, as an obstacle in the way of his recovery on his sheriff's deed. He had not sued at law, and was not in possession when he filed his bill.

We have looked very carefully into this question, and have been able to find very few authorities bearing on it. The oldest adjudged case we have found is *Anderson v. Roberts*, 18 Johns. 515. In that case, SPENCER, C. J., without arguing the question, said: "There existed, then, no impediment to the respondents bringing their action at law; and I must consider it a novel doctrine, not to be sanctioned, that a court of equity will take cognizance of questions purely of a legal nature. and within the acknowledged jurisdiction of a court

of law." That case was decided in 1820. In 1830 the case of *Frakes v. Brown*, 2 Blackf. 295, was decided. The ruling in that case is peculiar. It is not shown in the report who was in possession—whether the purchaser at execution sale, or the fraudulent vendee. The court below had "set aside the deed from Jones to Frakes as fraudulent; and decreed that Brown was the owner in fee simple of the land, and that he should forever be quieted in his title acquired under the sheriff's sale. Frakes and all claimants under him were also perpetually enjoined from disturbing Brown's possession of the premises." If this language is correctly employed, Brown must have been in possession. If in possession, and the invalidity of the adversary title had not been judicially ascertained, there can be no question that the bill was properly filed, under all the authorities.—Sto. Eq. Ju. § 700, and notes. But the peculiarity is found in the opinion of the Supreme Court. Its language, after pronouncing the deed from Jones to Frakes fraudulent and void, is as follows : " The decree of the Circuit Court, therefore, so far as it relates to the setting aside of the deed from Jones to Frakes, and the quieting of the title of Brown against any claims under that deed, and as it relates to the costs, must be affirmed. The other part of the decree, which adjudges that Brown is the owner in fee of the premises, must be reversed." The opinion contains no argument in support of the chancery jurisdiction exercised in that cause, and we are unable to affirm on what ground it rests, or why, after entertaining jurisdiction to declare the deed void, the court did not go on and do complete equity, and administer full relief. Another noticeable feature of the opinion is, that the court entertained jurisdiction, at Brown's instance, to adjudicate, vacate and remove Frake's claim of title as a cloud and incumbrance on Brown's title, which it could only do on first ascertaining that Brown had a title which was thereby clouded or incumbered, and yet refused to affirm that Brown's title was a fee simple. Now, it will not do to say this abstention from an opinion on the strength of Brown's title was based on a fear that there might be a better outstanding title in a stranger, and, therefore, it would not be safe to affirm his title was a fee simple. Decrees and judgments only bind parties to the suit, and their privies, and do not prejudice or affect strangers to the record.—*Walker v. Elledge*, at last term, and authorities cited. The only reasonable construction we can place on this part of the appellate court's judgment is, that it did not and would not pronounce on the sufficiency of Brown's title, but left him to establish that in a suit at law. If such is its proper construction, is not the effect to render two suits

[Smith's Executor v. Cockrell.]

necessary, when an action of ejectment by Brown, if he was out of possession, would have established both the validity of his title, and the invalidity of Frake's? The court expressed no reason for its opinion, and we are unable to conjecture one.

*Harrison v. Kramer,* 3 Iowa, 543, is decided on the authority of *Frakes v. Brown,* and gives no reason for the opinion.

The case of *Leupold v. Krause,* 95 Ill. 440, really decides nothing material in this case. In that case, the sheriff had sold and conveyed a tract of land which embraced the homestead, without the necessary steps being taken to lay off the homestead. The homestead in Illinois was limited to $1,000 in value. Under many rulings in that State it was held, that an execution purchaser, under these circumstances, could not maintain an action at law for the recovery of the possession, for the reason that the court of law had no power or machinery for separating the homestead from the residue of the tract.—*Stevens v. Hollingsworth,* 74 Ill. 202. Such, however, is not the rule in chancery, as administered by that court. On a bill filed, either by the claimant of the homestead, or by the execution purchaser, the court will set off the homestead of $1,000 in value, and decree the residue to the execution purchaser.—*Loomis v. Gerson,* 62 Ill. 11. The court, in giving its opinion in *Leupold v. Krause, supra,* said: "Upon a sale being made, with the homestead set off, the purchaser becomes entitled to the possession of the portion sold, immediately upon the execution of the sheriff's deed; whereas, if a sale be made without regard to those provisions, the purchaser can obtain no title, nor any right to possession, until he obtains a decree in equity setting off the debtor's homestead." See, also, *Hartwell v. McDonald,* 69 Ill. 293. So, according to the rulings of that court, the complainant, although clearly entitled to all of the land above the value of the homestead, not only was without an adequate remedy at law, but he had no remedy whatever in that forum.

In Bump on Fraud. Conv. 520, is the following paragraph: "A party who has purchased at a sale under an execution, may file a bill to remove a cloud on his title and the impediment to the quiet enjoyment of his property." He cites in support of this principle the cases from 2 Blackf. and 3 Iowa, commented on above, and *Bailey v. Burton,* 8 Wend. 339, and *Gerrish v. Mace,* 9 Cush. 235; *Thigpen v. Pitt,* 1 Jones Eq., *contra.* *Bailey v. Burton* was a bill filed in aid of execution creditors, attacking a mortgage by their debtor as fraudulent, and if not fraudulent, that they might be permitted to redeem, by paying the sum actually due. The court say: "The specific relief prayed for is, to be permitted to redeem."

(6)

The case of *Gerrish v. Mace* was also a bill to redeem, by the purchaser of an equity of redemption at execution sale. The case was analogous to *Russell v. Dudley*, 3 Metc. 147. The complainant in *Gerrish v. Mace*, after purchasing only the equity of redemption, had attempted, under the prayer for general relief, to assail the *bona fides* of the mortgage. The court would not allow this, and confined him to the right to redeem under his special prayer. In the conclusion of the opinion the court said : "In order to avoid the conveyance in this case, the creditor was not bound to levy specifically ; he had his option to levy or sell on execution, and if he elected to sell at auction, the purchaser would take the right to avoid all fraudulent conveyances and incumbrances." This, although correct as a principle of law, did not arise in the case, and was stated only out of abundant caution, to prevent a misinterpretation of the principle settled. It does not assert, or intimate, that such purchaser could go into equity to establish his right, or to remove the obstacle opposed by the alleged fraudulent conveyance, to his recovery at law. These cases do not bear on the question we are discussing.

When the title to real estate has been in a judgment debtor, but has been conveyed to him before execution lien on the judgment attached, the creditor, if he wish to assail the conveyance as fraudulent, has an election of two modes of procedure. He can, by bill in chancery against the debtor and his alienee, test the *bona fides* of the conveyance ; and if he succeed in having it declared fraudulent, the property, relieved of the cloud, will then be sold in fair market, with the prospect of its bringing a reasonable price.—1 Brick. Dig. 655, §§ 215, 216, 217. Common observation approves this method, as favoring alike the debtor and the creditor, because its tendency is to increase the sum the property will bring.

But fraud is cognizable at law as well as in equity, and vitiates all transactions into which it enters, no matter how solemn the form of their execution.—2 Brick. Dig. 14, § 10 ; Code of 1876, § 2124. So that, if property of a debtor has been conveyed by him with intent to delay, hinder and defraud his creditors, it remains, as to his debts, as if no attempt had ever been made to convey it. As to creditors, and those claiming under them and in their right, the legal title remains in the judgment debtor until the sale and conveyance by the sheriff, and then it passes to the purchaser. This, because the fraudulent conveyance is treated as a nullity—as if it had never been. *The purchaser's title is legal, or it is nothing.* If the debtor's conveyance, in defiance of which he pur-

[Smith's Executor v. Cockrell.]

chased, is fraudulent, then his title acquired at the sheriff's sale *is legal, without a semblance of an equitable title entering into it. So, if the debtor's conveyance is not fraudulent, the purchaser has no title, legal or equitable.* We agree with Justice Pearson, in what he said so forcibly, in *Thigpen v. Pitt*, 1 Jones Eq. 49. The court below had decreed relief to complainant, on a bill substantially like this. Judge PEARSON said: "The decree has a contradiction upon its face. It declares that the plaintiff, 'by his purchase and sheriff's deed, has a valid legal title,' and then orders the defendants, Belcher and wife, 'to execute a deed conveying the land to the plaintiff in fee simple.' If the plaintiff has the title, upon what ground can he come into a court of equity and ask for that which he already has? * * * * This is a new question, and we thought it proper to have the benefit of a second argument. Mr. Biggs [counsel in that case] has applied himself to the subject with his accustomed diligence during the last six months, * * * and taking the entire range of the English reports, and all of the United States, his diligence has only enabled him to find a *single case* in which a court of equity has ever entertained such a bill. * * We will here, however, make this general remark: Considering the infinite number of sales that have been made by sheriffs, and how very desirable it would be, in all cases, for purchasers at such sales to have 'the cloud' removed from their title, the fact that but a single case can be found in which the aid of a court of equity has been invoked for that purpose, proves almost conclusively, of itself, that there is no such jurisdiction." The case referred to by Judge PEARSON, is *Frakes v. Brown*, 2 Blackf., on which we have commented. *Thigpen v. Pitt* is the only case bearing on this question we have been able to find, which employs any argument in its support. NASH, C. J., delivered a dissenting opinion, in which he concurred in the conclusion reached in *Frakes v. Brown*, but we consider the argument of Justice PEARSON, in opposition to that case, to be unanswerable.

It is said, however, that the fraudulent deed, if left outstanding, may be the foundation of a suit at some future day, which the complainant may be called on to defend, when his sources of evidence are lost by lapse of time, or by the death or absence of witnesses. There are many answers to this. First: This is the precise ground on which courts of equity rest their jurisdiction to remove clouds from title, *and such bills can only be maintained, by parties who are in possession.* They alone need such remedial assistance, for they alone are *without power to institute a suit at law,* and thus test the relative strength of the rival titles.

Second : If such purchaser at sheriff's sale can maintain a bill to have such fraudulent deed cancelled as a cloud on his title, it must be on the ground that a verdict and judgment in his favor, pronouncing his title superior to that of his adversary, and putting him in possession, fail to secure to him all he is entitled to. If this be so, then such bill would be maintainable as well after, as before recovery at law. Indeed, better after recovery, for then complainant would be in possession—an important element in every claim to have a cloud removed from title.

Third : The establishment of such principle would render two suits—one at law, and one in equity—proper, if not necessary, in all cases where the adversary parties have each a claim of title not void on its face : or, what is a more marked anomaly, *would open the door of the Chancery Court for the trial of all ejectment suits between parties thus circumstanced,* on the familiar and well defined principle, that that court, acquiring jurisdiction for one legitimate purpose, will generally retain the case, and administer complete relief, without turning the parties over to the delay and expense of an independent suit at law. And this species of relief would not be confined to cases in which the adversary title is alleged to be tainted with fraud. *The Chancery Court removes clouds, whether created in fraud, or with honest but mistaken intentions.* We submit if the exercise of such jurisdiction will not tend greatly to augment chancery dockets, and to draw into that forum the larger part of controverted land titles, which we have been accustomed to have adjudicated in the common-law action of ejectment, or the real action of our statute. *We apprehend the books may be searched in vain for a precedent, where a Court of Chancery has entertained a bill, to cancel as a cloud on title that which had been solemnly adjudged invalid, by a verdict and judgment in a court of law, having jurisdiction in the premises.*

We do not deny that there are cases in which Courts of Chancery administer relief, analogous to that obtained in actions of ejectment. Where the demandant's title is equitable, chancery alone can give him relief. There are other cases, where courts of law, by reason of their unyielding rules, can not administer full and adequate relief. In such cases, chancery intervenes, and applies its plastic machinery where courts of law are powerless.—1 Brick. Dig. 627, §§ 33, 34, 35. These principles, however, have no application to legal titles. The present bill, so far as it seeks to remove the cloud from the title of complainant to the land alleged to have been fraudulently conveyed to Mrs. Johnson, coming as it does after sale and conveyance by the sheriff under exe-

cution, is without equity.   This principle applies only to the
tract of land conveyed by Nash and wife to Mrs. Johnson,
the title to which had been previously vested in Johnson
himself.   The Chief-Justice agrees with me in the views
above expressed.

If the bill in this case had shown that the deed made by
Nash and wife to Johnson, in the first instance, was de-
stroyed, or was secreted or withheld, without having it
recorded, we are not prepared to say chancery would not
entertain jurisdiction, to establish, and furnish evidence of
this important link in the chain of title.

On all other questions, we concur in the views expressed
by brother SOMERVILLE.