Knowles *v.* Inches.

---

## KNOWLES *et. al. v.* INCHES *et al.*

Transcripts on appeal to this Court, should not contain irrelevant or unnecessary matter. Instead of copying into a statement for a new trial or on an appeal, deeds and transcripts of records, when no point is made on the construction of the language, a brief statement of the instrument answers every purpose, and is all that the Practice Act requires.

Knowles *v.* Inches.

A bill to restrain vexatious litigation upon the ground that the right to real property has been determined in former suits, must show that the title to the property was determined in a suit or suits, in which all the claimants to the title were parties.

Although some of the parties may be mere accommodation grantees, and fictitious depositories of title, still they have a right to be heard at law in their own defense, before Courts of Chancery can pronounce definitely on their claims.

The remedy, by bill of peace, is provided in instances of this sort for cases of vexatious litigation, after the real merits of the controversy have been settled at law.

A judgment suspended by appeal, cannot be considered as conclusive of the fact of title, even without reference to the manner in which it was obtained.

APPEAL from the Fourth District, County of San Francisco.

This was a bill in equity to restrain the defendants from prosecuting certain suits, depending in the Courts of San Francisco, and from leasing and conveying certain real estate situated in said city.

The bill charges that there has been a long course of vexatious litigation respecting certain real estate, and that the title has been determined in favor of the plaintiffs in said bill, and that several actions are still prosecuted and threatened to harass and annoy plaintiffs.

Defendants had judgment in the Court below, and plaintiffs appealed to this Court.

The other facts necessary to understand the points decided, appear in the opinion of the Court.

*H. S. Love* for Appellants.

*A. F. Willson* for Respondents.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

We must reprehend the practice, which is too common, of stuffing a transcript with irrelevant and unnecessary matter. The present case affords a remarkable illustration. The transcript contains some two hundred and thirty-three pages, when everything essential to a review of the case might easily have been given in fifty. Besides the delays, unnecessary expense and labor thus created, the points are hid

in this mass of superfluous matter, and it frequently becomes more difficult to find out what they are, than to decide them when found.    The Practice Act, so far from sanctioning any such course of proceeding, by implication, rebukes it.    Instead of copying into a statement for a new trial or on an appeal, deeds and transcripts of records, when no point is made on the construction of the language, a brief statement of the instrument answers every purpose.    There is no sense in copying a judgment, execution, and the like, in cases where no question arises as to the form, or the particular words of them; but a short description of the paper, giving the sums, date, Court, etc., is sufficient.    If proper attention were given to the making up of statements, we are convinced that the transcripts in this Court might, on an average, be reduced to less than one-half the present size.    We might exercise our discretionary power in the imposition of costs in this case, probably with some effect, but for the difficulty of ascertaining by whose fault the insertion of this unnecessary matter is caused.    In this case the appellants' counsel, in his brief, apologizes for the length of the transcript, and refers the cause of it to the other side's insisting on the insertion of all this useless stuff.    On this suggestion, of course, we cannot act.

This case is a bill in equity to restrain the defendants from prosecuting certain suits, depending in the Courts of San Francisco, and from leasing and conveying certain real estate herein situate.    The ground upon which the bill proceeds is, that there has been a long course of vexatious litigation, and that the right has been determined in favor of the appellants; that sundry actions are still prosecuted and threatened, to harass and vex the appellants.

The case was referred to a referee, who, in his report, gives the history of the litigation, which, for variety and extent, is unexampled, considering the small value involved.    This history, indeed, might afford an illustrative appendix to Scott's account of the celebrated suit of Peter Peebles *v.* Plainstaines, or Dickens' report of the case of Jarndyce *v.* Jarndyce.    Indeed, it would appear that the only use to which the parties designed to put this lot was to make it a foundation of a lawsuit, which they have erected upon it; an edifice divided, from cellar to garret, into all manner of secret chambers, involved passages and dark entries.    The real parties to the controversy seem to have

been too few in number to keep up the strife, and hence, both sides have called in a relay of fresh partizans to figure in the fight, having impressed them by means of sham deeds and fraudulent conveyances. Perjury is charged, with no lack of nervous expressions, upon the respective sides, and the lower arts of forensic warfare, such as snap judgments and partial statements of facts, as we are informed by counsel, give character and variety to the proceedings. Ten solid pages of transcript paper, closely written, are taken up by the able gentleman who acted as referee, in giving a mere analysis of the leading facts of these fierce forensic conflicts; the whole narrative of which, unabridged, exceeds, by a few pages, Sir Walter Scott's account of Napoleon's first campaign in Italy. Fearing, probably, that the litigation might, in some way, be brought to an untimely close in the lifetime of the litigants, the respondents are accused, with some reason, of adopting the economical plan of dividing out the subject into small parcels, and suing for this lot by *inches*.

We cannot take time to review this protracted controversy, and to follow its mazes through all their ramifications; nor is it necessary, for a simple point is conclusive. We regret that we have no power to put a step to this comprehensive and embarrassing litigation, and that we must turn a deaf ear to the pathetic appeal of the appellants' counsel, not " to suffer his clients to be lawed to death;" but, though " it is the interest of the Republic that there should be an end of litigation," and not less the interest of these parties, yet the rules of law forbid our putting an end to it in this way.

It seems that *the title* of the lot was tried only in the case of Knowles *v*. Calderwood and Chittlebury. In that case there was judgment for Knowles; but Calderwood appealed from the judgment, and the appeal is, or was, at the time of the referee's report, pending in this Court. It is charged that, in that case, Forrest, who had a mortgage on the premises given by Knowles, was one of the principal witnesses for Knowles; that he swore, on his *voir dire*, that he was not interested, and that the verdict was mainly, or at least in part, gained on his testimony. The referee finds—and there certainly seems to be *some* evidence to support the finding—that the case was not satisfactorily and fairly tried. This judgment, suspended by appeal, cannot be consid-

ered as conclusive of the fact of title, even without reference to the manner in which it was obtained.

Besides, there was no trial on the merits in any action to which Inches, who claims to be interested through Calderwood, or Van Valkenburg, who is lessee of Calderwood, or holds under his title, or to which action Sanborn and Forrest, who were of the opposite faction, were parties. It is true that these parties, as the referee finds, are, except Van Valkenburg, mere *accommodation* grantees, and fictitious depositories of title ; but they have a right to be heard at law in their own defense, before the Courts can pronounce definitely on their claims, however false they may appear in a controversy *inter alias.*

Chancery will not interfere in cases like this, until after a trial at law adjudicating the title ; and this means a trial in an action in which all the claimants to the title are parties. Otherwise, it would follow, that Chancery might assume jurisdiction, in the first instance, of all actions of ejectment. The remedy, by bill of peace, is provided in instances of this sort, for cases of vexatious litigation, after the real merits of the controversy have been settled at law.

If the appellants are in possession, it is easy to frame a bill to quiet title upon the ground of superior right ; but this bill is not framed for that purpose.

The judgment of the Court below is affirmed.