BULL'S HEAD BANK (WAIT v.). See Case No. 17,043.

BULLUS (CURE v.). See Case No. 3,486.

BUNDY (CARLISLE v.). See Case No. 2,410.

---

# Case No. 2,133.

### BUNCE et al. v. GALLAGHER et al.

[5 Blatchf. 481;[1] 7 Am. Law Reg. (N. S.) 32.]

Circuit Court, S. D. New York. Sept. 18, 1867.

EQUITY JURISDICTION — SUIT TO ANNUL FORGED DEED—PARTIES — MISJOINDER — WAIVER—EVIDENCE — DISCREDITING DOCUMENT — POWER OF ATTORNEY—INSANITY OF PRINCIPAL — DEED BY GRANTOR OUT OF POSSESSION.

1. The provision of the 16th section of the judiciary act of September 24th, 1789 (1 Stat. 82), that suits in equity, shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law, is merely declaratory, and does not exclude the courts of the

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

United States from any part of the field of equitable remedies.

[Cited in Re Sabin, Case No. 12,195; Dow v. Berry, 18 Fed. 125.]

[See Morgan v. Beloit, 7 Wall. (74 U. S.) 618; Brown v. Pacific Mail S. S. Co., Case No. 2,025; Crane v. McCoy, Id. 3,354; Boyce v. Grundy, 3 Pet. (28 U. S.) 210; Sullivan v. Portland, etc., R. Co., 94 U. S. 808; Wylie v. Coxe, 15 How. (56 U. S.) 415; Harding v. Wheaton, Case No. 6,051; Bean v. Smith, Id. 1,174.]

2. A suit in equity to annul a forged deed of land and have it cancelled, and the record of it declared void, brought by the legal owner of the land, who is the grantor named in the forged deed, while he is out of possession of the land, is not taken out of equitable jurisdiction by the fact that the deed is void.

3. It is not necessary, before bringing such suit, that the legal owner should establish his title, and obtain possession of the land, by ejectment at law.

4. The question whether the deed is forged or not, involves no question as to the title of the land. Such a suit is peculiarly one of equitable cognizance.

5. On the trial of such a suit, proof, on the part of the plaintiff, of the forgery of his signature to the forged deed, and that the person who acknowledged its execution was not the plaintiff, is not open to objection, as violating the rule that a party cannot discredit a paper which he produces in evidence.

6. As to parties, all persons who have an interest in the object to be attained by a suit in equity, must be joined. Those whose interests are in harmony, and only those, should be joined as plaintiffs.

[Cited in Bland v. Fleeman, 29 Fed. 671.]

7. The authority conferred by a power of attorney is suspended by the subsequent insanity of the person who gave the power.

8. A court of equity will hesitate to dismiss a suit for the want of proper, or for the joinder of improper parties, where the difficulty can be remedied, or where the relief sought can be given without impairing or jeopardizing the interest of any one.

[Cited in Lamb v. Farrell, 21 Fed. 12.]

9. Where a misjoinder of parties is apparent on the face of a bill, it should be taken advantage of by demurrer or answer, or it will be deemed to be waived. ·

10. A deed of land held adversely to the grantor, under color of title, given when he is out of possession of such land, is void, even though the adverse holding and the possession under it are founded on a forged deed purporting to have been given by such a grantor.

[Cited in Coulson v. Portland, Case No. 3,-275.]

In equity. This was a final hearing, on pleadings and proofs, on a bill in equity, filed by Mary E. Bunce, and Francis M. Bunce, her husband, Francis A. Bull, George H. Bull, William W. Bull and Henry K. W. Welch against Jane Ann Gallagher and Michael Smith, to annul and declare void an alleged forged deed, and the record thereof, purporting to convey to the defendant Gallagher the title to a house and two lots of land situated on Staten Island, in the state of New York, and to remove the cloud which such alleged forged instrument had thrown on the genuine title, and to cancel an agreement entered into between the defendants for the sale and transfer of the premises in question to the defendant Smith, and to restrain them from consummating the same, or any similar contract. [Decree for plaintiffs.]

Joseph A. Welch, for plaintiffs.

Charles M. Da Costa, for defendants.

SHIPMAN, District Judge. Though the objects sought by the bill in this case are simple, the facts and legal questions involved in the controversy are numerous and complicated. A detailed statement of the material facts is, therefore, indispensable to a clear understanding of the points to be decided.

Mary E. Bunce, one of the plaintiffs, is a daughter of the late John W. Bull, of Hartford, Connecticut. The latter was, for many years prior to, and at the time of, his death a resident of Hartford. As early as September, 1861, being in poor health, and desirous of relieving himself from the care of his estate, he gave to his said daughter, Mary E., a full power of attorney, authorizing her to transact all his business. On the 4th of April, 1862, a purchase of the house and two lots which have become the subject of this controversy, was effected, in behalf of Mr. Bull, or, at least, in the interest of his estate, under the direction of the said Mary E., acting, as she supposed, under the letter of attorney. As her father was then suffering under disease of body and mind, and unable to transact any business, she took the deed of this property in her own name. Her object in so doing was to hold in her hands the power to transfer the title to the property, whenever it should become advisable, for the interest of her father's estate, to sell it. The consideration for the purchase came from his estate, and she held the property avowedly for his benefit. This property, which lies in the town of Southfield, Richmond county, New York, was purchased from George M. Root and wife, and was by them conveyed to the said Mary E., then Mary E. Bull. The sale was subject to a mortgage given by Root and his wife to a third party. Subsequently, this mortgage was foreclosed, and a sale, under a decree of the supreme court of New York, was made by the sheriff of Richmond county. Mary E. Bull, assuming to act as her father's agent, under the said letter of attorney, purchased in the property, and, as before, and for the same reasons, and with the same object, took the deed in her own name. This sheriff's deed was executed March 20th, 1863. Thus, Mary E. Bull became invested with the legal title to this property, by the two deeds referred to, both of which were duly recorded in the office of the clerk of Richmond county.

On the 9th of July, 1863, John W. Bull died, leaving five children, namely, Mary E., Frances A., George H., and William W.,

all of whom have joined in this bill, and John W., Jr. He left a last will and testament, dated the 10th of May, 1858. The will was duly proved before the court of probate for the district of Hartford, and approved as a valid instrument, July 15th, 1863. One of the terms of the will was, that all future acquisitions of real estate should be embraced in, and pass by it. After a specific devise of the homestead of the testator in Hartford, with the furniture and movable property connected with it, to his two daughters, the remainder of his estate, real and personal, was given to the two daughters and the two sons who are named as plaintiffs in the bill. Nothing was given by the will, to the other son, John W. Bull, Jr. W. H. D. Callender was named as sole executor, and proceeded to settle the estate, which embraced considerable property.

On the 23d of May, 1864, Mary E. Bull executed and delivered a deed of this property on Staten Island, together with other real estate therein described, to Henry K. W. Welch, one of the plaintiffs in this bill, in trust. On the same day, Welch executed an instrument, purporting to be a declaration of the trust under which he received this deed from Mary E. Bull, and setting forth, that, so far as this property was concerned, he held it as trustee for all the devisees named in the will of John W. Bull, who were declared to be the equitable owners thereof. On the 28th of May, 1864, Mary E. Bull was married to Francis M. Bunce, who is also joined as a plaintiff in the bill. During the time Mary E. Bull held this property she did not attend personally to its management, but employed an agent for that purpose. Very little income was derived from it, and it appears to have received little attention.

In 1865, it was deemed advisable to dispose of this property, and, on examining the records in the office of the clerk of Richmond county, two instruments were found on record, describing the house and lots—one, a mortgage purporting to be signed and acknowledged by Mary E. Bull, to secure the payment of one thousand and sixty dollars to Harriet G. and Louisa Moore, and dated December 15th, 1863; the other, an absolute deed, also purporting to be signed and acknowledged by Mary E. Bull, and dated March 2d, 1864, conveying the premises to Jane Ann Gallagher. On further inquiry, the following singular facts were discovered: In November, 1865, a woman called upon Mr. Journeay, a real estate broker in the city of New York, stating that she had a house and two lots on Staten Island upon which she wished to obtain a loan of money. She left a memorandum describing the property, (which proved to be that in question,) gave her name as Mary E. Bull, stated that she resided in Hartford, but was going to New Haven to remain some time, and that any communications touching the loan should be

addressed to her there. It appears, also, that she went to New Haven immediately, or very soon, put herself in communication with respectable lawyers in that place, and employed them to write to Mr. Journeay on the subject of this loan. The result was, that a loan of one thousand and sixty dollars was obtained from Harriet G. and Louisa Moore, through their attorney in New York, and a mortgage was executed and delivered to secure the same. This instrument was executed in New Haven, and the whole business was done through a correspondence between the New Haven lawyers and Mr. Journeay in New York. The woman signed and acknowledged the deed before one of her counsel, George F. Gardiner, of New Haven, who was a proper magistrate. She received the money, paid her counsel, and left. In about two months she again made her appearance at Mr. Gardiner's office in New Haven, and stated that she had concluded to sell this property, which she had before mortgaged. At her request, a correspondence was again opened by Mr. Gardiner with Mr. Journeay, which resulted in a supposed sale of this property to Jane Ann Gallagher, one of the defendants, the woman signing and acknowledging the deed, as before, and receiving the consideration, about 1,500 dollars. This last deed was executed on the 2d of March, 1864. Both deeds were signed with the name of Mary E. Bull. On the trial, it was conclusively proved, that this woman, who had thus purported to mortgage and finally sell this property, was an adroit impostor. She did not even resemble the genuine Mary E. Bull. She succeeded, however, in passing herself off as such, deceiving her counsel, to whom the genuine Mary E. Bull was a stranger, and obtaining the money from the Moores, and from Mrs. Gallagher. The mortgage and deed were recorded in the clerk's office in Richmond county, and Mrs. Gallagher, with her husband, went into possession on the 14th of March, 1864. Her husband subsequently died, but Mrs. Gallagher has continued in possession of the premises, by herself and tenants, till the present time. Among the tenants was Michael Smith, the other defendant in this bill, with whom Mrs. Gallagher entered into negotiations for the sale of this property to him.

Of course, the mortgage to the Moores, and the deed to Mrs. Gallagher, are mere forgeries and conveyed no title. The bill is brought to annul the deed to Mrs. Gallagher, to require her to deliver it up to be cancelled, to declare the record of it void, to restrain her and Smith, by injunction, from consummating their negotiations for the sale of the property to him, and to prevent her from assuming to sell it to any one else.

There can be no dispute as to the facts. The proof is overwhelming, that neither Mary E. Bunce, formerly Mary E. Bull, nor any one of the other plaintiffs, nor any other

person who had any right or title to this property, had any knowledge, or were in law chargeable with any knowledge, of this pretended deed, or of the possession of Mrs. Gallagher under it, until about a year after its execution and the entry of Mrs. Gallagher, who had been thus unwittingly made the victim of a fraud and an imposture. The defence to the bill is, therefore, technical, and turns upon questions of law.

The defendants insist—First. That this court has no jurisdiction, at least in the present state of things, as the plaintiffs, or the real owners, have an adequate remedy at law, and must first resort to ejectment, and settle the title and obtain possession of the premises; second, that the bill should be dismissed for a misjoinder of parties plaintiff; third, that improper evidence was received on the trial, which, if rejected, leaves material allegations of the bill without proof.

I will consider, first, whether the plaintiffs have an adequate remedy at law, in the just and proper sense of that term. This is important, inasmuch as the 16th section of the judiciary act of September 24th, 1789 (1 Stat. 82), provides, "that suits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate, and complete remedy may be had at law." It has been held, that this provision is merely declaratory, and does not exclude the courts of the United States from any part of the field of equitable remedies. Baker v. Biddle [Case No. 764]; Boyce v. Grundy, 3 Pet. [28 U. S.] 210. In the latter case, Mr. Justice Johnson, in delivering the opinion of the court, uses this emphatic language: "This court has often been called upon to consider the 16th section of the judiciary act of 1789, and, as often, either expressly, or by the course of its decisions, has held, that it is merely declaratory, making no alteration whatever in the rules of equity on the subject of legal remedy. It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity." The question, then, arises, whether the bill before us, on the general principles of equity jurisprudence, presents a case of equity jurisdiction. It is proper to remark here, that the fact that the deed in question is a void instrument, does not take the case out of the jurisdiction in equity. Peirsoll v. Elliott, 6 Pet. [31 U. S.] 95; Hamilton v. Cummings, 1 Johns. Ch. 517. Numerous authorities might be cited in support of this doctrine, but it is not necessary, in the present case, as the defendants' counsel concede the point. They insist, however, that, before the plaintiffs can come into a court of equity, for the relief sought by this bill, they, or whoever is the legal owner, must establish title, and obtain possession, by ejectment at law. The argument at bar in support of this claim proceeded upon the assumption, that the bill presented the case of a doubtful and disputed title, and that, as courts of equity do not adjudicate simple questions of title to land, no relief can be granted. But this difficulty is not presented by the bill. There is no question of title involved between the plaintiffs and the defendants, except that involved in the question whether the deed is forged or not. This forged deed has not impaired or complicated the title to this land. It has thrown a cloud over it, especially as it stands on the records of lands in the county where the property is situated; and this cloud obscures the true state of the title, and is well calculated to lead to misapprehension, embarrassment, and mistaken litigation. As the invalidity of the deed does not appear on its face, but can only be made apparent by extrinsic evidence, it is peculiarly the duty of a court of equity to sweep it away. The case of Ward v. Dewey, 16 N. Y. 519, cited by the defendants on the point, concedes this doctrine. Pratt, J., at page 522, says: "But when such claim appears to be valid upon the face of the record, and the defect can only be made to appear by extrinsic evidence, particularly if that evidence depends upon oral testimony, to establish it, it presents a case for invoking the aid of a court of equity, to remove it as a cloud upon the title. The case of fraud in procuring a deed to be executed which apparently conveys the title * * * is a familiar illustration." There is here no controversy about a doubtful title between these parties, and the question of possession has no legal relation to the object now sought to be attained by the decree of this court.

But it is said that there is great doubt as to which of the plaintiffs holds the legal title, and that, as the equitable power of the court can be exercised only in aid of the legal owner, the legal owner must be ascertained before the court can entertain jurisdiction. But this objection goes only to the question, whether the proper parties have been made plaintiffs in the bill. Some one is entitled to have this spurious and fraudulent deed, which now clouds the title to this property, swept off. Whether that right pertains to these plaintiffs, I will now consider, in disposing of the defendants' second main objection, namely, that there is an improper joinder of parties plaintiff.

As a general rule, all the parties in interest should be joined in a bill, either as plaintiffs or defendants, whether their interests be equitable merely or legal. While it is not always necessary to join all who have an interest in the subject-matter of the suit, those who have an interest in the object sought to be attained by the suit must be joined. Story Eq. Pl. §§ 72–136 et seq. Those whose interests are in harmony, and only those, should be joined as plaintiffs. Saumarez v. Saumarez, 4 Mylne & C. 331. Now, it is evident that the interests of all

the devisees of John W. Bull named in the bill are in harmony. There is not only no conflict or variance between those interests, but all those devisees are concerned in the relief which this bill seeks. This will be seen by recurring to facts already stated. Mary E. Bull purchased this property with her father's money, avowedly as his agent, and took the title in her own name, solely as a matter of convenience, and to enable her to transfer it with facility. She had been acting under a power of attorney, given her by her father, when he was competent to execute such an instrument. But, at the time she purchased this property from Root, as well as at the time when the sheriff's deed was made to her, her father's mental powers had so far decayed as to render him incapable of legally transacting any business. The authority conferred upon her originally by this letter of attorney was, therefore, extinguished, or, at least, suspended, by his mental incapacity. This is well settled doctrine, though it has been intimated that, before the authority of an agent can be suspended by the insanity of the principal, occurring after the execution of the power, the fact of lunacy must be established under an inquisition. Still, I apprehend that, whether the fact were formally established or not, the agent could not justify or support an act under the authority originally given, done after the agent had knowledge of the incapacity of his principal. Story, Ag. § 481, and note. But this question is not material here. Mary E. Bull evidently acted under the mistaken idea that the authority conferred upon her by the power of attorney was still in force. But, whatever her notion was, she acted in good faith, purchasing this property for and on account of her father, as she supposed, and in the interest of his estate, paying for it out of his funds, and avowedly holding it for his benefit. She held the legal title, but the property, in equity, belonged to him. By his will, his equitable interest passed to his devisees, though one of them, the daughter, continued to hold the legal title.

But, it is objected, that the four plaintiffs who are devisees under John W. Bull's will, are in no condition to maintain any suit touching real estate in the state of New York, because the will has never been proved and admitted to probate in the latter state. But this suit ought not to fail upon a merely formal and technical point like this. Courts of equity are slow to dismiss suits for want of proper, or for the joinder of improper, parties, where the difficulty can be remedied, or where they can give the relief sought without impairing or jeopardizing the interest of any one. Rather than that the suit should fail, I should feel bound to withhold the decree until this supposed defect could be cured by a probate of the will in this state. But, in the first place, it is doubtful whether it was indispensable for any one

of these devisees, as such, to be joined as plaintiffs. The holder of the legal title could maintain the bill, without compromising any of the rights given by the will. But, joining those who have equitable interests in the subject-matter would be unobjectionable, or, at least, if the misjoinder is apparent on the face of the bill, it should have been taken advantage of by way of demurrer, or, at all events, by answer. Now, the will of John W. Bull, the deed of Mary E. Bull to Welch, in trust, and the declaration in trust by the latter, executed at the same time as the deed, are referred to in the bill, and annexed thereto as exhibits. The alleged misjoinder was, therefore, apparent on the face of the bill, and should have been taken advantage of by demurrer. Mr. Justice Story, in his treatise on Equity Pleading (section 544), says: "In cases of misjoinder of plaintiffs, the objection ought to be taken by demurrer; for, if not so taken, and the court proceeds to a hearing on the merits, it will be disregarded, at least, if it does not materially affect the propriety of the decree." The bill shows, that these devisees claim an interest in this property under the will of their father, who died in Connecticut, the place of his domicil, where his will was proved and his estate went into settlement. There is no allegation that the will was proved in New York. The misjoinder alleged is put upon the ground of want of interest, but this was apparent on the bill, and, as it was not demurred to, the defect, if any, must be deemed to have been waived. Trustees of Watertown v. Cowen, 4 Paige, 510. Certainly, the court cannot regard it in the present stage of the suit, especially as this misjoinder, if it be one, in no way affects the propriety of the decree asked for, as that decree may affect the interests of either the plaintiffs or the defendants.

But, the propriety of making Mary E. Bull, one of the devisees, a party plaintiff, is not open to objection of any kind, for she holds the legal title to this property, under the sheriff's deed to her. Her deed to Welch, on the 23d of May, 1864, was void, under the statute of New York. She was out of possession, though she did not know it at the time. Mrs. Gallagher was in possession, under color of title. The fact, that the deed under which the latter claimed was void, makes no difference. Her possession was adverse, for she was in actual, personal possession, and the fact of possession, and the quo animo of the possessor, are the tests by which to determine the question whether the possession is adverse or not. La Frombois v. Jackson, 8 Cow. 589. Mary E. Bull, therefore, has never parted with the legal title to this property. The only deed she has ever made was that to Welch, and that was void. She is, therefore, beyond all question, a proper party to this suit.

Of course, it follows that, as Welch took no title to this property, he has no interest

·of any kind, and, therefore, should not have been joined. But this fact was apparent on the face of the bill, in connection with the ·fact of Mrs. Gallagher's possession, which was well known, of course, to her, and to Smith, her co-defendant. This objection ·should, therefore, have been taken in an ·early stage of the case. The defendants answer to the merits alone. They should have taken advantage of the misjoinder of Welch, in their answer. Lord Langdale, in the case ·of Raffity v. King, 6 Law J. (N. S.) pt. 1, pp. ·87, 93. His misjoinder in no way embarrasses the defendants, nor can it in any manner affect the propriety of the decree. It will, therefore, be disregarded.

On the hearing, the plaintiffs exhibited the forged deed described in the bill, and pro·ceeded to prove, by Mrs. Bunce, that the signature purporting to be hers was a forgery. They also offered Mr. Gardiner, who made ·the certificate of acknowledgment on the ·forged instrument, to prove that the person who executed it was not Mrs. Bunce, the real owner, although he supposed so at the ·time. To this evidence the defendants objected, on the ground that it was not competent for the plaintiffs thus to discredit papers which they had produced in evidence. But the rule upon which this objection rests has no application to a suit of ·this character. The plaintiffs are no parties to these instruments, and are, therefore, at liberty to prove ·their spurious character.

Let a decree be entered, in accordance with ·the prayer of the bill, against both defendants. No costs will be allowed against the ·defendant Smith.