# Lehman, Durr & Co. v. Shook.

*Bill in Equity to Enjoin Action of Ejectment, and to Cancel Deed as a Cloud upon Title.*

1. *Failure to record deed to land; its effect against subsequent encumbrancer.*—The failure to record a deed conveying lands until more than three months after its execution, and until the vendor has conveyed the lands in mortgage to secure a debt contracted contemporaneously with

[Lehman, Durr & Co. v. Shook.]

the execution of the mortgage, is void and inoperative against the mortgagee, he having no notice of the existence of the deed.

2. *Sale of land under power contained in a mortgage; its effect and operation.*—A sale of land under a power contained in a mortgage is equivalent to a decree of strict foreclosure, cutting off, and barring the equity of redemption, uniting in the purchaser the legal estate vested in the mortgagee, and the equity of redemption residing in the mortgagor, and leaving in the mortgagor or his alienee only the right or privilege of redemption conferred by the statute.

3. *Redemption by judgment creditors; what rights acquired thereby.* Judgment creditors of the mortgagor who redeem lands sold under a power contained in the mortgage, succeed, by operation of law, to the place of the purchaser from whom they redeem, and are entitled to, and may maintain all the rights he could have asserted; and when in possession, they can successfully defend an action of ejectment brought against them by alienees of the mortgagor claiming under a prior deed, which is void as against the mortgage on account of the failure to have it recorded prior to the execution of the mortgage, and within the time prescribed by the statute.

4. *Bill in equity to enjoin action at law and to remove cloud from title; when it will be entertained.*—In this case the bill was filed by judgment creditors who had redeemed lands sold under a power contained in a mortgage from the purchaser, and had been let into possession, to enjoin an action of ejectment brought against them by alienees of the mortgagor, his daughters, claiming under a deed executed prior to the mortgage, reciting a valuable consideration, but which was not recorded until after the mortgage was executed, and more than three months after its execution; and to have the deed declared fraudulent and void, and cancelled as a cloud upon complainants' title. The bill also charges, and the evidence tends to prove, that the deed was voluntary, and fraudulent. *Held,* that the bill contained equity, and the complainants were entitled to an injunction of the suit at law, and a cancellation of the deed as a cloud upon their title. (BRICKELL, C. J., holding, that the deed was void as against the mortgage by reason of the failure to have it recorded, and that the complainants, being in possession, were entitled to the relief, independently of the question of fraud; SOMERVILLE, J., holding, that if there was no averment of fraud, it might be seriously questioned whether such a bill would lie, or ought to be maintained; but that, in as much as the deed purports on its face to be a valid conveyance, constituting a cloud on the title, and had been fraudulently executed, equity would take jurisdiction, a court of law being powerless to cancel the deed. STONE, J., *dissenting, held,* that while to remove a cloud from the title to land at the instance of the party in possession, is a clear ground of equity jurisdiction, it is exceptional and *quia timet* in its nature, and exists only because the party in possession has no opportunity of testing the strength of his own title, or that of his adversary; and that in this case the reason upholding the jurisdiction failing on account of the pendency of the action of ejectment, and both titles being purely legal, the case presented by the bill is one of legal cognizance only, and a court of equity should not entertain the bill, or grant the relief sought.)

APPEAL from Etowah Chancery Court.

Heard before Hon. H. C. SPEAKE.

The bill in this cause was filed, April 25th, 1879, by Lehman, Durr & Co. against Laura E. Shook and Hester E. Hodges (formerly Shook), to have delivered up and cancelled, as fraudulent and void, and as a cloud upon complainants' title, a deed executed to the defendants by their father, W. T. Shook, con-

veying to them certain real estate situate in the town of Gads-
den, and to enjoin them from further prosecuting an action of
ejectment, which they had commenced against the complainants
for the recovery of the land conveyed in the deed.   The case
made by the bill may be summarized as follows :  On the 27th
of September, 1874, the complainants recovered judgment
against W. T. Shook in the Circuit Court of Etowah county for
money which they had loaned him in November, 1872.   On
the 14th of August, 1873, W. T. Shook borrowed $500 from
the Mobile Life Insurance Company, a body corporate, and se-
cured it by a mortgage, executed contemporaneously with the
loan, on the real estate in Gadsden, with power of sale.   Shook
having made default, the company, on the 30th of April, 1875,
sold the real estate under the power contained in the mortgage,
and one R. T. Conley became the purchaser, to whom the com-
pany afterwards conveyed it.   On the 2d of August, 1876, the
complainants, as judgment creditors of W. T. Shook, filed their
bill in said Chancery Court against him, said Conley, and one
Collins, to whom it was alleged Conley had sold said real estate,
to redeem.   Collins was a non-resident, and a decree *pro con-
fesso* was taken against him.   On December 14th, 1877, they
were, by the decree of said court, let in to redeem ; and on the
30th January, 1878, they were put in possession by and under
the further decree of said court.   On the 10th of June, 1873,
W. T. Shook executed to the defendants in this cause the deed
under which they claim the land in controversy.   This deed re-
cites a consideration of $3000 as paid by the defendants to their
father.   It was not filed for record until about 1st December,
1873, and W. T. Shook continued in possession of the real es-
tate until the time of the sale by the insurance company to Con-
ley.   The bill charges that the recital in the deed as to the con-
sideration is false; that it was voluntary, and was made by
Shook, who was then insolvent, with the intent to defraud his
creditors.   On the 14th of February, 1879, the defendants com-
menced their action of ejectment against complainants, which
is sought in this suit to be enjoined.   It is also averred in the
bill that neither the complainants, nor the insurance company
had any notice of the execution of the deed by Shook to his
daughters, the defendants.

　　The defendants demurred to the bill on the following, among
other grounds:  (1).  Because the bill alleges that the complain-
ants are in possession of the property alleged to be fraudulently
conveyed, and that the respondents have now pending, and are
actively prosecuting, their action of ejectment to recover pos-
session of said property from complainants, and to test their
title to the same, as against complainants, and no reason is al-
leged in the bill " why the complainants can not set up the mat-

ters and things stated therein as a ground for this court of equity to take jurisdiction of said matters and things, in their defense to said ejectment suit." (2). Because the bill shows that the complainants have a full, adequate and complete remedy at law for the grievances and wrongs set forth in the bill. (3). Because the bill shows that a court of law has already taken jurisdiction of the matters and things charged in the bill, and no reason is assigned why a court of equity should enjoin the court of law from carrying into execution its jurisdiction and power as to such matters, or why the court of law can not grant the complainants as full, adequate and complete relief as a court of equity. (4). Because it is apparent from the bill that a court of equity has no jurisdiction of the cause as made by the bill. Their demurrer was overruled, and they answered, denying that the deed was fraudulent or voluntary, and insisting that it was executed for a valuable consideration and in good faith, and conveyed to them the title to the said real estate, which was superior to the complainants' title. In an amendment to their answer, they also averred that the decree under which the complainants redeemed and were let into possession, was afterwards vacated and annulled, and the bill dismissed.

On the hearing, had on pleadings and proof, the chancellor found that the deed executed to the respondents by their father, was voluntary and fraudulent; but being of the opinion from the evidence, that the complainants were not entitled to redeem, and following the decision rendered by him on final hearing in the case of *Lehman, Durr & Co. v. Collins* and others, he caused a decree to be entered, dismissing complainants' bill. From that decree this appeal was taken, and it is here assigned as error. An appeal was also taken by the complainants from the decree dismissing their bill against Collins and others, and it was by this court reversed. That case is reported in this volume, *ante*, p. 127.

AIKEN & MARTIN, with whom were RICE & WILEY and E. P. MORRISSETT, for appellants. (1). It is admitted that a party in possession of land with a good legal or equitable title, can file a bill to set aside a deed executed to defraud the creditors of the grantor.—*Rea v. Longstreet*, 54 Ala. 291. The jurisdiction in such case rests upon the theory, that the party in possession can not bring a suit at law against himself, and the party holding the cloud on the title might delay bringing suit, until the testimony of his adversary had been lost. The mere fact, that the party claiming under the deed which is a cloud, brings a suit at law against the party in possession can not change the rule. One trial in ejectment, if the verdict should be for the defendants, is not final; but the plaintiffs could re-

[Lehman, Durr & Co. v. Shook.]

new their suit at any future time. The cloud would still remain upon the title; and the same reasons apply with all their force for allowing complainants to file a bill to remove the cloud *after* the trial of the ejectment suit and verdict for them, as *before* the commencement of such suit. No case can be found where a pending ejectment suit ousted the jurisdiction of a court of equity. (2) The complainants' title under the decree allowing them to redeem, is equitable, and, although superior to the title of defendants, they could not defend under it in the action of ejectment.—Code of 1876, § 3899. In such case the jurisdiction of a court of equity is clear.

DENSON & DISQUE, *contra*. (1). It is a general rule that equity never enjoins an action at law except in cases where an unfair use is being made of the legal forum, which, from circumstances of which equity alone can take cognizance, should be restrained, lest an injury be done that would be wholly remediless at law. High on Inj. § 44; *Smithurst v. Edmunds*, 1 McCarter (N. J.), 408; *Richardson v. Mayor*, 8 Gill (Md.), 433. (2). A court of law is as potent to condemn the title of the appellees upon the ground that the same was made to hinder, delay and defraud creditors, as a court of equity.—*Stokes v. Jones*, 21 Ala. 731. (3). The appellees suing at law to test the validity and superiority of their title to that of appellants, will not be enjoined, since the interference in such case would be repugnant to the principle that, where different courts have concurrent jurisdiction, the right to determine the controversy belongs to the tribunal to which resort is first had.—High on Inj. § 63. (4). It is settled law, that one out of possession can not maintain a bill to remove a cloud from title, because an opportunity is then presented to determine his title at law, as it is optional with him to bring an action of ejectment, whenever he pleases. It seems that it would be a correct and logical corrollary from this well settled principle, that whenever an appropriate action is pending in a law court, to determine the validity, strength and superiority of title to land, the party in possession can not enjoin the legal proceedings, and transfer the question to a court of equity, and there have it determined. (5). The principles which authorize a court of equity to interfere to remove a cloud from the title, is that a party, being in possession, can not bring an action against himself, to test the strength of his title, or to establish it, and it would be inequitable and unreasonable to require him to stand by in suspense, until it suits the interest or caprice of his adversary to bring suit, thus leaving his title in the meantime under distrust, while he is embarrassed in its use and enjoyment, its alienation chilled, its value depreciated, and he liable to lose the benefit

* VOL. LXIX.

[Lehman, Durr & Co. v. Shook.]

of important evidence by the death of witnesses, or the facts fading from their memory by lapse of time.—*Rea v. Longstreet*, 54 Ala. 291. (6). But all the evils which bring these principles into operation, and which give jurisdiction to courts of equity, are obviated, when an action of ejectment is brought, and is then actively prosecuted to determine the validity, priority and superiority of the titles to the property in question. In this case, as ample opportunities are offered the appellants to show the defects in appellees' title in the action of ejectment, the reason upholding the jurisdiction of the court of equity fails, and that court should not interfere.—*Jones v. De-Graffenreid*, 60 Ala. 145–51; *Shaw v. Lindsey*, 60 Ala. 345–51; *Johnson v. Murphey, Agnew & Co.*, 60 Ala. 288–93; *Huntington v. Allen*, 44 Miss. 663; *Glazier v. Bailey*, 47 Miss. 395; *New York v. Ins. Co.*, 11 Paige, 384; *Beauchamp v. Putnam*, 34 Ill. 378; *West v. New York*, 10 Paige, 539.

BKICKELL, C. J.—The result of the decision in *Lehman, Durr & Co. v. Collins*, at present term, *ante*, 127, is, that the appellants, by the decree of the court of chancery, letting them in to redeem the premises in controversy, acquired the title and estate of William T. Shook, which he had by mortgage conveyed to the Mobile Life Insurance Company. The conveyance of the premises to his daughters was executed prior to the mortgage, which was a security for a debt contemporaneously created; and the fact is, that the mortgage was executed with the knowledge and with the consent of the daughters, verbally expressed, intending that it should have precedence of the conveyance to them. We do not deem it necessary to examine closely the evidence, and determine whether the conveyance to the daughters is free from fraud, founded on a valuable consideration, and capable of being enforced against the creditors of the grantor. Conceding its validity, the failure to record it until more than three months after its execution, and until the mortgage to the Life Insurance Company had been recorded, renders it void and inoperative as against that mortgage.—*Saffold v. Wade*, 51 Ala. 214.

The only right or equity the daughters could have asserted, was the redemption of the premises from the mortgage. The sale under the power in the mortgage was the equivalent of a decree of strict foreclosure; it cut off and barred the equity of redemption, uniting in the purchaser the legal estate vested in the mortgagee, and the equity of redemption residing in the mortgagor, and in the daughters as his alienees.—*Childress v. Monette*, 54 Ala. 317. All that remained to the mortgagor was the right or privilege of redemption conferred by the statute; a right to re-purchase the lands, and to be restored to the estate

[Lehman, Durr & Co. v. Shook.]

he had in them at the execution of the mortgage, and at the time of the sale under the power.   The same right or privilege the statute reserved to the daughters, because of the convey-ance to them by their father, the mortgagor.—Code of 1876, § 2886.   The right or privilege is strictly statutory; in the ab-sence of the statute, it would have no existence.   If it is not claimed and exercised in the mode, within the time, and upon the terms and conditions prescribed by the statute, it is waived and lost.—*Spoor v Phillips*, 27 Ala. 193; *Grigg v. Banks*, 59 Ala. 311.

The purchaser at the sale under the mortgage succeeded to all the estate of the mortgagee, and to all his rights and equi-ties, as well as to the equity of redemption the mortgagor or his alienee could have asserted.   He was in a large sense the assignee of the mortgagee, substituted to his place, acquiring his rights.   The appellants, by the redemption, by operation of law, succeeded to the place of the purchaser from whom they redeemed, and are entitled to stand upon and maintain all the rights he could have asserted.—*Keeling v. Heard*, 3 Head (Tenn.), 592.   They are in possession, and can successfully de-fend the action of ejectment the daughters have commenced against their tenants.   The mortgage, the source of their title, having been recorded before the deed to the daughters, and three months having elapsed after the execution of the deed before its registration, the statute renders it void as against the mortgage.—Code of 1876, § 2166.

A court of equity is reluctant to interpose by injunction against an ejectment at law, founded on a legal title the plain-tiff is fairly proceeding to establish.   An equitable case, a case of purely equitable cognizance, must be made to appear, before the court will interpose to restrain the proceedings in the action. Kerr on Injunctions, 26.   If the action of ejectment was not pending, the equity of the appellants would be undoubted. The deed to the daughters, though void as against their title, is prior in date, apparently the older and better conveyance, and is of record.   A purchaser from the appellants, tracing the title, would find it, and its invalidity not appearing on its face, rest-ing upon extrinsic facts, it is evident a sale could not probably be effected for the fair value of the premises.   Whenever a deed or other instrument exists, not void upon its face, which may be vexatiously or injuriously used against a party having the rightful possession of real estate, throwing a cloud or suspi-cion over his title or interest, and he has not at law a plain and adequate remedy for relief against it, the constant practice of a court of equity is to intervene, and remove the cloud or sus-picion—when the suspicion is reasonable—by directing that the instrument be delivered up and cancelled, or by making the de-

cree in reference to it, which, under the particular circumstances of the case, justice and the rights of the parties may require. 1 Story's Eq. §§ 692–711. No general rule can be laid down which will cover all the cases in which the court will interpose at the instance of a party in possession having a clear title, to remove from it all clouds, and for the prevention of future litigation. The jurisdiction does not rest upon arbitrary rules; much depends upon the facts of the particular case, and in the exercise of the jurisdiction, the court is clothed with a large discretion.—*Fonda v. Sage*, 48 N. Y. 173. The whole doctrine is referable to the general jurisdiction which the court exercises in favor of a party *quia timet*. It is intended for the prevention of litigation, which the outstanding instrument, apparently valid, may generate in the future,.to protect the true title from all injury probably resulting from it, and to render the possession quiet and secure. It is only at the instance of a party in possession the court intervenes, for the reason that if he have not possession, the remedy at law for the recovery of it is generally plain and adequate. When in possession, the law furnishes him no legal remedy for the trial of the strength of his own title and the contestation of the validity of the outstanding instrument. This is, however, only one of the reasons for which the court intervenes. There are other and broader reasons—the prevention of litigation, the protection of the true title and the possession, and because it is the real interest of both parties, and promotive of right and justice, "that the precise state of the title be known, if all are acting *bona fide;* and if not, that a merely colorable and pretended claim is a fraud upon the real owner, and as such should be extinguished."—1 Story's Eq. § 711a

The pendency of the action of ejectment ought not to arrest the jurisdiction of the court. If that action is prosecuted diligently, there can be, it is true, but one result, a verdict and judgment for the appellants. Its continued prosecution rests wholly in the discretion of the plaintiffs—they can at any time abandon or dismiss it, and renew it at any time, until the statute of limitations has perfected a bar. If they elect to continue its prosecution, the verdict and judgment in favor of the appellants would not bar a second action. Two judgments in favor of the defendant in an action of ejectment, putting in issue the same title, not one, operate a bar to a subsequent action.—Code of 1876, § 2969. The pendency of the action is rather an additional reason for the interference of a court of equity, than an objection or an obstruction to its jurisdiction. *Woods v. Monroe*, 17 Mich. 238. There is the greater necessity for quieting the title and the possession, and removing the cloud which affects its value and security. If the court should

now refuse intervention, the action of ejectment could be immediately dismissed, the obstruction to the intervention of the court removed, and there would then be an unquestioned equity on the part of the appellants to invoke the jurisdiction of the court, and an unquestioned duty on the part of the court to intervene.    The intervention and jurisdiction of the court can not be subjected to the mere caprice or volition of parties holding instruments of no real value to themselves, but which can be of immediate injury, and may at any time be made the cause of vexation to the rightful and lawful possessors and owners of land.    It is against conscience that such instruments should be retained, and it is hardly possible that they are retained for any other than some sinister purpose.    Reluctant as may be a court of equity to stay proceedings in ejectment to try the legal title to lands, the special circumstances of particular cases, the inability of courts of law to meet all their exigencies, sometimes necessitate the intervention of the court. When there is a clear ground for the intervention of the court, of which the court of law has not jurisdiction, the jurisdiction of the two courts is not concurrent, and where relief is necessary for the purpose of removing a cloud upon an undoubted legal title, a case of purely equitable cognizance is presented. High on In. § 327.

The decree of the chancellor must be reversed, and the cause remanded to the Court of Chancery, with instructions to render a decree enjoining the action of ejectment, and declaring the conveyance of the premises, executed by William T. Shook to his daughters, Laura E. and Hester E., bearing date June 10th, 1873, of record in the court of probate of Etowah county, void and inoperative as against the title of the appellants.

SOMERVILLE, J.—I concur in the conclusion reached by the Chief Justice in this case, without committing myself to the views expressed in his opinion.    The bill is filed by a complainant, who claims to hold the legal title to certain lands, and its purpose is to cancel a deed held by two of the defendants on the same lands, on the ground that the instrument was *void for fraud*, and was a *cloud on the title* of complainants.    If there were no averment of fraud, it may be seriously questioned whether such a bill would lie, or ought to be maintained.    But when an instrument purports on the face of it to be a valid conveyance, so as to constitute a cloud on the title of the property conveyed, and has been fraudulently executed, as seems to be the case here, I am of opinion that equity will and should take jurisdiction, on the ground that the remedy by ejectment at law is not full and adequate.    A court of law is incompetent to sweep away the deed which clouds complainants' title, so long

[Lehman, Durr & Co. v. Shook,]

as it remains in the hands of the defendants uncancelled, and especially where it has been recorded under the registration laws. The sale of real estate may be interminably embarrassed so long as the property is clouded by such an encumbrance. For the support of these views I refer to my dissenting opinion in *Smith's Ex'r v. Cockrell*, 66 Ala. 64, where the authorities are fully collated.

STONE, J., *dissenting.*—Each of the parties to this suit claims under a title strictly legal. Lehman, Durr & Co. are in possession, and the Shooks instituted an action of ejectment to dispossess them, claiming under a legal title. The title of Lehman, Durr & Co. is legal. The Shooks showed no disposition to dismiss the action of ejectment, or to relax in its prosecution. To recover in that action, they must show a paramount legal title. If the title of Lehman, Durr & Co. is the better, then the Shooks will fail in the ejectment suit. So, the present contention presents the simple, naked question of the trial of strength between two rival legal titles, for the trial of which an action at law had been commenced, and was being prosecuted, by the claimant out of possession, against the claimant in possession. In this stage of the controversy, Lehman, Durr & Co. filed a bill in chancery against the Shooks, prayed for and obtained a temporary injunction against the action at law, and sought to have the question of title settled by a decree of that court. The chancellor dismissed the bill, and my brothers have reversed his decree, and granted the relief prayed. The bill seeks no discovery, and no removal of any obstruction to a fair test of the title in the ejectment suit. To make the case still more clearly one of legal cognizance, the opinion of the majority of the court declares, and reaffirms what was decided in the case of *Lehman, Durr & Co. v. Collins*, at the present term, *ante* 127, that the legal title of Lehman, Durr & Co. is superior to that of the Shooks. So, the case is narrowed down to this: Can the powers of the Chancery Court be successfully invoked by one in possession of real estate, holding under a title legal in form, against another who also asserts legal title to the same lands, and who is asserting that title by suit in ejectment, and this, before there has been any verdict or judgment pronouncing upon the validity of the respective titles? And, in such case, will an injunction be awarded, arresting the action of ejectment, and transferring the trial of these legal titles to the Chancery Court? And is the prayer in such bill to have the adversary's title declared subordinate, and decreed to be delivered up and cancelled, a sufficient equity to displace the common right of all men to have their legal rights determined before law forums, and their contested legal demands tried by a jury of their country?

[Lehman, Durr & Co. v. Shook.]

To remove a cloud from title, is certainly one of the clear grounds of equity jurisdiction. This, as I understand the principle, is part and parcel of the doctrine of *quia timet.* It is unreasonable that one's title to land should remain forever in doubt, or should so remain until the holder of an adversary title may choose to test its strength by suit. It may be, he will refrain from suing, until facts are forgotten, or until witnesses have died, or removed beyond the jurisdiction of the court, and, in any event, the tendency, if not the effect of such outstanding, adversary title, is to impair the vendibility and market value of the land. Hence, courts of equity will entertain jurisdiction, and remove the cloud from the title. But at whose instance? Not at the instance of the party out of possession. Why? Because, being out of possesion, there is no impediment to his bringing his action at law, and testing the strength of his own, and his adversary's title. So, we hold that to maintain such bill, the complainant, if his asserted title be legal, must be in possession; and such is the overwhelming weight of authority.—*Smith v. Cockrell,* 66 Ala. 64; *Tyson v. Brown,* 64 Ala. 244; *Baines v. Barnes, Ib.* 375; *Jones v. DeGraffenreid,* 60 Ala. 145; *Daniel v. Stewart,* 55 Ala. 278; *Rea v. Longstreet,* 54 Ala. 291; *Orton v. Smith,* 18 How. (U. S.) 263; *Woods v. Monroe,* 17 Mich. 238; *Herrington v. Williams,* 31 Tex. 448; *Polk v. Pendleton,* 31 Md. 118; *Eckman v. Eckman,* 55 Penn. St. 269; *Sherman v. Fitch,* 98 Mass. 59; *Clouster v. Shearer,* 99 Mass. 209; *Sullivan v. Finnegan,* 101 Mass. 447; *Clark v. Life Ins. Co.,* 52 Mo. 272; *Burton v. Gleason,* 56 Ill. 25; *Branch v. Mitchell,* 24 Ark. 431; *Barron v. Robbins,* 22 Mich. 35; *Lake Bigler Road Co. v. Bedford,* 3 Nev. 399.

As I understand the opinion of my brother, the Chief Justice, he does not gainsay the principle stated above. He contends, however, that Lehman, Durr & Co., the complainants in this suit, are in possession, and, therefore, they meet the required conditions for the maintenance of this bill. The answer to this is, that the Shooks had already commenced their action and were prosecuting it, and hence the reason of the rule had failed in this case. The rule itself being exceptional and *quia timet,* should it not also cease when the reason on which it rests ceases to exist? But, says the argument, the Shooks may dismiss their ejectment suit, and thus leave Lehman, Durr & Co. without remedy, save in chancery. A sufficient answer to this is, that they have not done so; and the present bill is framed, not in the fear that they will dismiss their suit, but to enjoin them from prosecuting it. Jurisdiction is predicated of facts averred, not of possibilities, or events that may happen. "Sufficient unto the day is the evil thereof."

It is a rule that chancery can not be invoked, when there is an adequate remedy at law.—*Ryan v. Mackmath*, 3 Bro. C. C. 15; *Franco v. Bolton*, 3 Ves. Jr 368; *Gray v. Mathias*, 5 Ves. 286; *Simpson v. Ld. Howden*, 3 Myl. & Cr. 97; *Pratt v. Pond*, 5 Allen, 59; 1 Brick. Dig. 639, § 3. It is contended by the Chief Justice that a recovery in ejectment by Lehman, Durr & Co. would not be complete and adequate; that the title under which the Shooks claim would be still outstanding, and may become the foundation of another suit. Under our statute, Code of 1876, § 2969, "two judgments in favor of the defendant in an action of ejectment, or in the nature of an action of ejectment, between the same parties, in which the same title is put in issue, is a bar to any action for the recovery of the land or any part thereof, between the same parties or their privies, founded on the same title." The present bill seeks to restrain Shook from having one judgment of the court on the strength of his title. Is this in accordance with the principles on which this doctrine rests? In this aspect of this case, it can be maintained, if at all, as a bill of peace—closely allied to bills *quia timet.* Speaking of bills of this class, Story, 2 Eq. Ju. § 859, says: "Another class of cases to which bills of peace are now ordinarily applied, is, where the plaintiff has, after repeated and satisfactory trials, established his right at law; and yet is in danger of further litigation and obstruction to his right from new attempts to controvert it." After stating that this doctrine was much questioned by Lord Cowper (whose decision, however, was overruled by the House of Lords), this author continues: "And this doctrine has ever since been steadily adhered to. However, courts of equity will not interfere in such cases before a trial at law; nor until the right has been satisfactorily established at law. But, if the right is satisfactorily established, it is not material what number of trials have taken place, whether two only, or more." In *Eldridge v. Hill*, 2 Johns. Ch. 281, Chancellor Kent said: "A bill of peace, enjoining litigation at law, seems to have been allowed only in one of these two cases; either where the plaintiff has already satisfactorily established his right at law, or where the persons who controvert it are so numerous as to render an issue under the direction of this court indispensable, to embrace all the parties concerned, and to save multiplicity of suits." In *Devonsher v. Newenham*, 2 Sch. & Lef. 199, the subject of the controversy was a considerable landed estate, of which John Devonsher was tenant in tail, with remainder to his brother in tail. John Devonsher levied a fine and suffered a common recovery, and then made his will, devising his estate for the payment of his debts and for other purposes. The bill was filed in the name of the widow and all the children of

John Devonsher. The chancellor, Lord Redesdale, said : " The trusts of that will are to be carried into execution; and it is contended that therefore the persons claiming under that will have a right to litigate, upon a bill brought to carry those trusts into execution, the right of any person claiming paramount to the will; not merely the title of the person who would claim in case the will were not formally executed, but (for it must extend so far) the right of any person whatever who may conceive that the testator had no title to the estate, but he himself has a paramount title. . . . That is the claim contended for by the parties plaintiff here. Now, no such suit has ever been entertained, as far as I can find; and it would be most dangerous to give the example of entertaining such a suit. Whenever one person claims title against another who is in possession, and the enjoyment of that person is disturbed, and he is put into a situation where he can not have that enjoyment as he ought in conscience to have it, there are cases where, for the purpose of quieting the possession, a suit is entertained. For example, where several ejectments have been brought in succession, and a bill is filed to quiet the possession and prevent perpetuity of suits, upon which the court can decree a perpetual injunction, such a bill will be entertained. But when the question is merely whether A. or B. is entitled to the property, and there has been no actual suit between them, there is no instance where a bill has been entertained." See also, strongly in point, *Welby v. The Duke of Rutland*, 6 Bro. Parl. Cases, 575. In the case of *Leighton v. Leighton*, 1 Pere Wms. 671, there had been two trials at law, with the same result. The court enjoined further suit on the title which had been twice pronounced invalid. The case of *Lord Tenham v. Herbert*, 2 Atk. 483, came before Lord Hardwicke. It was a case of disputed right of fishery between two Lords of Manors. A demurrer was sustained to the bill, the Lord Chancellor remarking that " where a question about a right of fishery is only between two Lords of Manors, neither of them can come into this court, until the right is first tried at law." In *Weller v. Smeaton*, 1 Bro. C. C. 572, Lord Chancellor Thurlow's opinion is correctly expressed in the head note as follows : " Bill to be quieted in the possession of a mill; and that defendants might pull down works about it, and be restricted from erecting others: demurrer, because plaintiff had not established his right at law, allowed." The case of *The Earl of Darlington v. Bowes*, 1 Eden, 270, was an application for an injunction after one verdict and judgment. It was said, "there was no precedent of a decree, where the inheritance would be bound, being made upon one verdict only." So, in the case of *Patterson v. McCamant*, 28 Mo. 210, it was

[Lehman, Durr & Co. v. Shook.]

said : "A bill of peace to restrain a person from instituting ejectment suits against another, on the ground that such suits would be vexatious, can not be maintained, unless the title to the land in dispute has been fully and satisfactorily litigated at law." In the body of the opinion it is said : "We have not been able to perceive any principle upon which the decree in this case can stand. The principle asserted in the bill and carried out by the decree is, that a court of equity will interpose its authority by perpetual injunction in favor of a person in possession of land, whose title is threatened by another person holding a worthless claim to the same land, where the person holding the adverse title is insolvent, and he has already brought two suits in ejectment, and caused them to be dismissed, or taken non-suits. . . . There are two kinds of bills of peace, and only two kinds." The first class he characterizes as bills to prevent a multiplicity of suits. This case presents none of the essentials of a bill of that class. The opinion proceeds : "Another class of cases is where the title has been fully and satisfactorily litigated at law. To put a stop to vexatious suits, which courts of law can not do, equity will interpose by injunction." *Knowles v. Inches*, 12 Cal. 212, is to the same effect. And such, I may add, are all the authorities. I have not found a single case where relief was granted on a bill such as this, while there is an overwhelming weight of authority against the maintenance of such a bill.—Leading Cases in Eq., Vol. 2, Part 2 (Earl of Oxford's Case), 1349.

But how stands the question on principle? A few authorities hold that one out of possession, but claiming a legal title, may file a bill to remove the cloud his adversary's title creates, to have his title quieted, and to be let into possession.—*Almony v. Hicks*, 3 Head, 39 ; *Bunce v. Gallagher*, 5 Blatchf. 481 ; *Thompson v. Lynch*, 29 Cal. 189. We have declined to follow those cases.—*Smith v. Cockrell*, *supra*, and see other cases cited *supra*. Now, the ruling of my brother, the Chief Justice, is, that, although by the Shooks' suit in ejectment they have removed the principal ground on which courts of equity entertain bills to remove clouds from title—namely: that being in possession, the complainant can maintain no suit at law to test the title—yet, the right to have the adversary title delivered up and cancelled furnishes a special equity, which authorizes him to go into chancery to obtain full and adequate relief.

If this furnish a special equity, which will uphold a bill by the claimant who is in possession, why will it not equally maintain a bill by one who asserts legal title, but who is out of possession? If the exercise of such power is necessary to give adequate and complete redress to the litigant in posession, why is it not equally necessary to give adequate relief to his adversary

[Lehman, Durr & Co. v. Shook.]

out of possession? Can there be a difference in the measure of relief the several parties are entitled to, dependent on the accident of possession? And if we accord this right to the defendant, because he is in possession, and deny it to him who is out of possession, do we not discriminate against the latter, by confining him to one mode of redress—an action at law—and to incomplete relief, leaving his adversary's title outstanding and uncancelled, while to the former, we give the option of defending at law, or of arresting the proceedings in the law court, and having the several titles pronounced upon by the chancellor, and of compelling his adversary to surrender up his title to be cancelled? Can that be a sound principle which works such unequal results? In *Smith v. Cockrell, supra*, we denied the relief here prayed, because the complainant was out of possession. His asserted title being in form legal, we ruled there was no impediment in his way, to prevent him from recovering in an action at law, if he had the better title; and we denied him relief on his bill.

In what is said above, I am dealing with legal titles. If the plaintiff's claim, or the defendant's defense be equitable, or if either claim rest on an estoppel *in pais*, this gives the court of chancery jurisdiction to inquire of and make available such equitable claim or defense.—1 Brick. Dig. 627; *Ib.* 796, § 7; *You v. Flinn.* 34 Ala. 409. And there may be special equities, which would give the chancery court jurisdiction, in cases other than these.

It is doubtful if what is stated above does not conflict to some extent with some of the utterances found in *Ray v. Womble*, 56 Ala. 32. To that extent, I desire to express my disapprobation of that case. See also *Lockett v. Hurt*, 57 Ala. 198. An expression stated *arguendo* in *Peirsoll v. Elliott*, 6 Pet. 95, goes somewhat to sustain *Lockett v. Hurt.* I express no decided opinion on the question there raised. Should the question come again before us, I think section 2969 of the Code of 1876, should be considered in its bearings on the question decided in *Lockett v. Hurt.* I only throw out this suggestion, without intending to intimate an opinion upon it.

My brother, Somerville, as I understand his views, does not differ with me in what is said above. He at least expresses no dissent from them. The bill of Lehman, Durr & Co. charges that the title, under which the Shook ejectment-suit was brought, is fraudulent as against them. I think it may be conceded this charge is supported by the testimony. Following his views, as expressed in his dissenting opinion in *Smith v. Cockrell, supra*, he holds that this fraud furnishes a special equity, which will uphold the present bill. In that case I expressed my non-concurrence in his views, and the Chief Justice fully concurred

Vol. LXIX.

[Lehman, Durr & Co. v. Shook.]

with me.  He, in common with the Chief Justice, thinks the
bill in this case contains equity, but in the grounds on which
they rest their several opinions, they are widely at issue.  The
equity on which the Chief Justice rests his opinion, is, in my
judgment, unsound, and in this Justice Somerville agrees with
me.  So, the equity on which Justice Somerville bases his opin-
ion, I hold to be equally untenable, and in this view the Chief
Justice concurs with me.  Still, two members of the court
think the bill contains equity, and that the chancellor erred in
dismissing it.  What should be our decision?  I do not think
this is a case, where two or more judges reach the same conclu-
sion, but for different reasons.  That principle I think applies,
and properly applies, where the same conclusion of fact or law
is reached, but by different processes of reasoning.  Here the
inquiry is one of law, and my brothers do not agree in their
conclusion.  The conclusion of law arrived at by each, is a
minority opinion in this court.  To test this, let us suppose two
bills are filed, one resting the equity on the ground relied on by
the Chief Justice, and the other, on the ground on which Justice
Somerville bases his opinion.  It is manifest we would hold
each bill wanting in equity.  Can two differing minority opin-
ions become a majority opinion?  We, in this investigation, are
pronouncing on questions of law.  Can the finger be pointed to
any legal principle, declared in this case, which will maintain the
equity of the bill?  Certainly not; for each of the grounds re-
lied on is pronounced by a majority of this court to be un-
sound.  And when this case returns to the chancellor, if we
reverse it, how is he to determine there is equity in the bill,
and on what ground?  The equity rests on two grounds, neither
of which derives any support from the other, and each of
which grounds is unsound, according to the judgment of a
majority of this court.  Our decisions ought to be rules of ac-
tion, and rest on principles which command the assent of at
least a majority of the court.

In my opinion, the decree of the chancellor ought to be af-
firmed; affirmed on principle, and affirmed as the logical result
of our differing opinions.